CHARLES WESTCOTT, PLAINTIFF IN ERROR, VS. THE
STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where the record shows that a grand jury was organized for a.
   term of the Circuit Court, and that during the term said grand
   jury presented against an accused an indictment properly
   signed and endorsed as required by statute, and marked filed
   in open court by the clerk, this is sufficient to show that said
   indictment was properly returned into court.

2. An objection that an indictment copied into the record, properly
   signed and endorsed was not presented by the grand jury in
   open court, should be made in the trial court where the record
   is made up; and it is too late to interpose such objection for
   the first time in the appellate court.

3. The premeditated design that is essential to make out a case of
   murder in the first degree is a question of fact for the jury;.
   and in the present case the testimony held sufficient to sustain
   a verdict of murder in the first degree.

Writ of error to the Circuit Court for Leon
county.

STATEMENT.

The plaintiff in error was indicted at the Fall term, A. D. 1892, of the Circuit Court for Leon county, for the murder of Amanda Howell, and during the same term of this court was arraigned, tried and convicted, upon the indictment returned against him, of murder in the first degree. From the judgment of the court imposing the sentence of death on him, the accused has sued out a writ of error to this court.

Henry Logan, a witness for the State, testified that on the night of October the 2d, 1892, he went up to town to see Amanda Howell, to pay her some money on a razor that witness had bought from her. When he got to town he found that she was in the city lockup, where she had been lodged that evening for being drunk on the street, and he went to see about getting her out, and did get her out. After getting her out of the lockup witness went home with her about dark, and remained with her at her house until Charles Westcott went there. About the time witness was going to leave he heard the boys coming up the road, and he decided to remain longer to see whether or not they were going to stop there. Amanda was on the porch, and a light was in the house. Witness had been trying some time to get her in the house, but she would not go. If she had gone into the house witness would have gone home. Some boys named Frank Edwards, Lazareth and Josh Graham came up there. Josh called Charles Westcott and Westcott responded "that he could not jump the ditch, but would go to the

bridge and come across." Westcott did so, and when he came up witness was sitting by the side of Amanda Howell, on the steps to the porch. Westcott came up and told Amanda "he wanted to see her, and she said go away, I am not in any seeing condition now." He said he only wanted to speak a few words to her. Then witness got up and went out of the yard and stood by the gate outside. Just as witness got outside of the gate Amanda started towards her room, and Westcott started in behind her. When Amanda got inside the house she told him to go back, and she pushed him out, but he would not go back. She told him again to go back, but he did not do so. Amanda turned around and took up a broom and struck Westcott with it three or four times over the head. He was standing near the door with his right side pushing against it when she was striking him, and before she could strike him again he sprang towards her with a razor in his hand. Witness saw the blade, it was bright, but he could not see the handle. He threw the razor around her neck and cut her, and then she tried to strike him again and he cut her over the head in another place. Westcott then jumped off the porch and started to run off, and left his cap lying on the porch. Some of the boys asked him why he did not run back and get his cap, and he ran back, jumped up on the porch, got his cap, flew out of the gate, jumped across the ditch and went on up the road. Amanda ran out into the yard, picked up a picket from the ground and looked for Westcott, but he was gone. Witness then saw the blood streaming from her. She then went in and laid down across

the bed and called on witness to go after the doctor; but he did not go.   This occurred between two and three o'clock, October 2d, 1892, in Tallahassee, Leon county, Florida.    Witness is a married man and lives with his wife in Tallahassee.

Elizabeth Sparkman testified for the State that she lived in an adjoining room in the same house with Amanda Howell on the 2d day of October, 1892. The night she was killed Henry Logan came home with her, and he was there with her on the porch when witness went to bed. Witness went to sleep, and the next thing she knew she was aroused and frightened, and heard Amanda hallooing, and when witness went to the door she saw Charles Westcott jump off the porch with his hat in his hand. She then went back in the room, put on her dress, came out and saw Amanda lying across the bed, and she asked witness to go after the doctor as Charles Westcott had cut her. Witness and her daughter went after the doctor, and when they got up the hill by Mrs. Shea's, there was Charles Westcott, who asked them what was the matter. They made no reply to him and went on, but he followed on behind. When they got to the corner at the top of the hill by the light they saw Josh Graham, and asked him to go with them after the doctor. That all four of them went first to Dr. Gunn's, and being told that he was not at home, they went after Dr. Philbrick, and told him what was the matter. He said he would come in a minute or two. They all went from Dr. Philbrick's together, as far as the lodge building, and Charles Westcott said he wanted to go by the shop,

and went that way. He said that he would be on down there as soon as he could go by and change his clothes. When they got back Amanda was not dead, and she said that Charles Westcott cut her. In a little while Dr. Philbrick and Charles Westcott came together, and Westcott looked at Amanda and held the lamp for the doctor to examine her.

Jesse Dennis testified for the State that he lived in a house near the one Amanda Howell lived in, and a fence separated the houses. On the night that Amanda was killed there was a festival out in the country, and a good many people were passing in the street near the houses, making a noise and he could not sleep. Witness heard loud talking in Amanda [Howell's house, and he went out into the yard· to hear what was said. There was a lamp burning brightly in Amanda's room and the door was open, and witness could see into the room from where he stood. He saw Amanda go into her room, and Charles Westcott started to follow her, and she told him to go back several times. Witness then saw Amanda grab a scrub of a broom and start to hit Westcott on the head with it. He jumped towards her with a razor and cut her. Witness then heard Amanda say, "You come into my house and cut me, you nasty rascal." She then said, "go for the doctor, go for the doctor, I am cut; Charles Westcott has cut me." Witness' house is nearer the street than Amanda's, and he was standing in his yard when he saw Westcott cut her. It was about two or three o'clock in the night, on October 2d, 1892.

Frank Edwards testified for the State that "we had been at a festival in the country, and when we got back to Amanda's house, by seeing a light over there we stopped, and Charles Westcott came around. Henry Logan and Amanda were sitting on the steps, and Westcott told her he wanted to see her." Logan went outside the gate and Amanda started to go in the house, Westcott following her. When she got inside the door she grabbed a broom and told Westcott to go back, and he said "I am not going to hurt you; I only want to see you." She replied: "I am not in a seeing condition at present." Westcott was standing at the door talking to her and she told him to leave, and he would not do so. She then began beating him over the head with the broom, and he jumped and cut her and ran away. Witness and some other boys then ran up town.

Paul Harrison testified: "We had been at a festival in the country, and when we got back to Amanda Howell's house, we saw a light there. We were on the walk by the fence, and Charles Westcott was on the other side of the ditch in the road, and we called him to come over, and he went around to a crossing and came across. Henry Logan was there." It was somewhere between two and three o'clock. Witness did not see any of the fight, as he left soon after he got there.

Phillis Hall testified that she heard, between two and three o'clock in the morning, October 2d, 1892, some one hallooing for a doctor, and ran over to

Amanda's house and found her lying across the bed.. Witness asked her who cut her, and she said Charles. Westcott.

Ella Spears testified that she heard some one calling the night Amanda Howell was killed, and went over to her house. Witness found Amanda lying across the bed with her neck cut, and she'said Charles Westcott did it.

Matilda Evans testified that the night Amanda. Howell was killed, she heard some boys over there, but did not know who they were. A little later witness heard some one call for a doctor, and she went over and found Amanda lying across the bed with her throat cut, and she said Charles Westcott did it.

Charles Hopkins testified as follows: "I found this. razor, gapped as it is now, in Geo. Walker's store, in the show case on the counter. There was no blood. on it. Charles Westcott was there."

Dr. E. E. Philbrick testified in substance that on the morning of October 2, 1892, some colored persons. came for him to go and see Amanda Howell, who had been cut. As he started to go down to her house, he met Charles Westcott at the top of the hill, and he went with witness to the woman, and held a light for an examination to be made. Witness did not know that Westcott did the cutting. Amanda Howell was not quite dead when witness got there, but was unconscious, and died soon thereafter. Upon an examination her wind-pipe was found to be severed, which was a mortal wound about three inches long and two.

inches deep. She was also cut on the head, and witness found certain pieces of razor, which were them put in evidence. He also stated that there was no doubt about the fact that Amanda Howell came to her death by reason of said wounds.

P. D. Demilly testified id substance, that he was a regular policeman in the city of Tallahassee, and met Charles Westcott at the top of the hill above Amanda Howell's house. He was chewing cane, and asked witness to have a piece. It being so late, after two o'clock in the morning, witness did not know but that Westcott had made a raid on some cane patch, and so he asked where he got the cane at that time of night. He said he got it at Geo. Walker's shop. Witness also asked him where he had been, and he said, "after the doctor for Amanda Howell," and they went on down to her house. On the way Dr. Philbrick overtook them. They found Amanda Howell lying across the bed, and witness thought she was dead. Henry Logan told witness that Westcott did the cutting, so he was arrested and carried to Mr. Hopkins.

For the defense, F. C. Wilkes testified, that Henry Logan came to him to get Amanda Howell out of the lock-up about dark, on October 2d, 1892. She had been put in there for drunkenness. Henry Logan went towards her home with her when she was turned out. From where Jesse Dennis lives, on account of the trees and the location, he could not have seen in

the house of Amanda Howell, or anything that was done. Witness was familiar with the location and situation of both places.

Thomas Gray testified for the defense that he had arrested Charles Westcott on the night of October 2d, 1892, about ten or eleven o'clock for being drunk, and turned him loose under instructions to appear before the mayor's court Monday morning. Witness saw him again about twelve o'clock, just before going off duty. He had then sobered up, and witness talked with him. He asked why he had been arrested, and what had he done, and was told it would be all right, and for him to go on to bed. Witness did not see him any more that night.

Defendant made the following statement: "On the night of October 2d, 1892, I had been out to a fair in the country about one and a half miles from town. When I got out there I found several of the town boys. Afterwards I came on back to town accompanied with Paul Harrison, Frank Edwards and James Jackson, and some other boys. When we got to the branch, (that's near Amanda's house) the boys were stopping and blowing harmonicas. I went on up the hill as far as the capitol gate, then I turned south and went down towards house at the same time, and heard the boys coming up the hill, and I got out of their way; when they got up the hill I went on down towards Amanda's house. When I got down there near Mrs. Shea's gate on the hill, I heard the scream of a

woman.   I then stopped to listen, for it surprised me. While standing there I saw some one coming up the road.   I waited to see who it was.   When they got to me I found it was Mrs. Sparkman and daughter; they looked into my face, and on seeing who it was, they said you will please come and go for the doctor with us?   Some one has cut Amanda Howell's throat; she is just a bleeding, it is so late and I am a little afraid the officers will bother us.   When we got at the top of the hill by the lamppost, there we saw Josh Graham; he came over to us there, and Mrs. Sparkman told (him) to come and go with us, and he did, and we four went on for the doctor.   We first went to Dr. Gunn's and called there, and Mrs. Gunn told us the doctor had gone out to see a patient.   Then we went to Dr. Philbrick's house and called there; he told us he would be on down in a minute or two; so we came on back then as far as the corner of the Masonic hall.   I asked them to come go by the shop with me, that I would get a stalk of cane to chew, and I would go down there with them; but she said to me, never mind, that she would go around this way, as I have got Josh to go with us; Charley you can go on, and come down there if you like; we are going to hurry on ; and I went on to the shop and unlocks the door and goes in and strikes a match and looked around for a lamp.   I found one in the kitchen ; I lit it and went to the cane barrel and picked out a nice cane, put the lamp on the counter, and put out down

to Amanda's chewing cane. When I got there I found Amanda lying across the bed. About the same time Dr. Philbrick came in; seeing me, he said, "Charlie hold this lamp; let's see if I can do anything.' He looked at Amanda and felt her pulse and said, 'I can't do this woman any good, she is dying now.' I said to him, 'what you say? don't tell me that, you make me sick.' I then felt her hands and face, and they were cold; she was there lying back across the bed. In the meantime I put the lamp back on the table and came to the door, and was standing there;. then Mr. Demilly asked who it was that did the cutting. Up steps Henry Logan : 'There is the boy, right there.' Mr. Demilly said : 'Who you mean, this boy Charlie?' He said: 'Yes sir; he is the very one.' Then Mr. Demilly said: 'Well, Charley, I will. have' to take you up to Mr. Hopkins.' I said, 'all right sir,' so we came on up town to the court house, and Mr. Hopkins taken me to jail. Gentlemen do you believe that Henry Logan would have stood there and seen me and Amanda have a fuss, and see me jump to her with a razor and cut her twice, and not say a word, or even make no alarm, after he had been sent with her to take care of her? No; he knew how to throw it off himself. Also as Mrs. Sparkman stated at the preliminary trial, she seen some one jump upon the porch; who it was she did not know. Now she says she saw me there; and (at) that trial she swore I said I was going by shop to get some cane; I would.

be on down there ; now she tells you I was going by the shop to change my clothes. I was never in anything before like this in my life, with white or black. I am caught up in this now ; so I leave it to you gentlemen. I am compelled to abide by the law. Nobody knows anything of me wrong. I never was fussy, no way; that's all."

The other facts in the case are stated in the opinion of the court.

*Stephen C. Miller* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The first error assigned is, that the record proper fails to show that the indictment was presented by the grand jury in open court. This objection is made for the first time in this court in the assignment of errors here, and counsel has cited no authorities in support of it, nor has he referred to it in his brief. This court has ruled that such objections should be made in the trial court where the record is made up, and where it can be made to speak the truth as to what did occur, and that it is too late to urge such objection for the first time in the appellate court. Gallaher vs. State, 17 Fla., 370; Bass vs. State, *Ibid*, 685.

The certified copy of the indictment found in the record is endorsed in proper form: "The State of Florida vs. Charles Westcott. Indictment for murder.

A true bill. M. F. Papy, foreman. Filed in open court this December 2d, A. D. 1892, Council A. Bryan, clerk." The record before us further shows that a grand jury was organized for the Fall term, A. D. 1892, of the Circuit Court for Leon county, and during this term of the court the grand jury, among other indictments, presented one against Charles Westcott, and noted upon the minute book as follows: "The State of Florida vs. Charles Westcott. Indictment, murder. Found Fall term, A. D. 1892. A true bill. M. F. Papy, foreman." Then follows in the transcript the copy of the indictment properly signed and endorsed as above. This record is sufficient to show that the indictment was properly returned into court.

The second assignment of error is, that the court erred in overruling the motion for a new trial; and the grounds of this motion are, that the verdict was contrary to law, and contrary to the evidence in the case. This assignment of error involves all the questions presented for our consideration in this case. The verdict of the jury ascertained the degree of the offense—murder in the first degree—and was otherwise rendered in accordance with the forms of law. The testimony, in our judgment, sustains the verdict of the jury, and the court did not err in overruling the motion for a new trial.

That the accused caused the death of the deceased by cutting her throat with a razor, is shown beyond

all reasonable doubt; and the only possible question that can arise on the testimony, is whether or not the killing was done with a *premeditated design* to effect the death of the deceased. The premeditated design which is essential to make out a case of murder in the first degree, is a question of fact for the jury, and in the present case it was properly submitted to them, and found against the accused. The testimony shows that the accused was in the act of intruding himself into the room of the deceased against her repeated protests, when she hit him over the head with the broom to keep him out, and then with no reason to apprehend the loss of his life, or serious bodily harm, he resorted to the deadly razor. The killing was unnecessary and unjustifiable, and was the result of the defendant's own wrong. The facts and circumstances of the case justify the finding of the jury, that the killing was done with a premeditated design to kill.

The judgment must, therefore, be affirmed.