STATE v. J. B. McCORMAC.

*Murder in the First Degree—Premeditation.*

1. In the trial of one charged with murder in the first degree, it is not essential that the prosecution,.in order to show *prima facie* premeditation and deliberation on the part of the prisoner, should offer evidence tending to prove a preconceived purpose to kill formed at a time anterior to the meeting when it was carried into execution.

2. In order to warrant the trial Judge in submitting to the jury the question of defendant's guilt, in a trial for murder in the first degree, it must have appeared in some aspect of the evidence that the defendant deliberately determined to kill the prisoner before inflicting the mortal wound.

3. In a prosecution for murder in the first degree, it appeared that the defendant had gone to the house of deceased in the evening, armed; had, in conversation with deceased, shown two pistols; had remained until 2 o'clock, when the deceased was shot. That there was no quarrel immediately before the shooting. That when he fired he said, "I guess that will do you," laid one of his pistols beside deceased, and remarked, "I reckon you will let me alone now." *Held*, it is not error to submit the question of defendant's guilt of murder in the first degree to the jury.

4. If the purpose to kill has been deliberately formed, the interval which elapses before its execution is immaterial.

Indictment for murder, tried before *Brown, J.,* and a jury, at October Term, 1894, of ROBESON Superior Court. The defendant was charged with the murder of Thomas Smith on the 3d July, 1894, was convicted and appealed.

STATE v. MCCORMAC.

The facts sufficiently appear in the opinion of Associate Justice AVERY.

*The Attorney General*, for the State.
*Messrs. French & Norment* and *Herbert McClammy*, for defendant (appellant).

AVERY, J.: It is not essential that the prosecution, in order to show *prima facie* premeditation and deliberation on the part of a prisoner charged with murder in the first degree, should offer testimony tending to prove a preconceived purpose to kill, formed at a time anterior to the meeting when it was carried into execution. "In order to conviction of murder in the first degree (said this Court in *State* v. *Norwood*, 115 N. C., 789) as the Judge below properly instructed the jury, it is necessary that the State should show that the prisoner deliberately determined to take the child's life by putting the pins into its mouth, and thereupon (*it being immaterial how soon after resolving to do so*) carried her purpose of so using the pins into execution and thereby caused death." It must have appeared in some aspect of the evidence that the accused deliberately determined to kill the prisoner before inflicting the wound, in order to warrant the Judge in submitting the question of his guilt on the charge of murder in the first degree to the jury. If the witnesses testified to the truth of facts and circumstances tending to show that while they were together on the occasion when the homicide occurred or even during the conversation which terminated in the shooting, the prisoner upon sufficient deliberation to make it a fixed and definite determination, formed the purpose to shoot and kill the deceased, it was the duty of the Court to allow the jury to pass upon the issue of guilt or innocence of murder in the first degree. There was, we think, testimony tending to show that the shooting was done after premedi-

tation and deliberation. The prisoner had gone to the house where the deceased, his brothers, and others, were during the evening and had remained talking either to the deceased alone or to the others with him, till 12 o'clock at night, when the deceased was shot. During all of that time his horse, harnessed to his buggy, was hitched near where they were talking. A witness stepped out into the field, leaving a lamp burning, and the other members of the party drinking with prisoner and deceased. The pistol fired while he was out and on his return the lamp was extinguished and deceased was shot—the two brothers of the deceased being then asleep. When the pistol was fired the prisoner said "I guess that will do you." He then walked up to deceased where he was lying dead, and placing one of his pistols beside him, said, "I reckon you will let me alone now." During his conversation with deceased it was in evidence that prisoner had two pistols in his hip pockets and that in the earlier part of the evening one of them was stuck in his pocket with the muzzle upwards, but that later while talking with deceased he had the two pistols out in his hands and put them back into his pockets in the usual position. Just before the shooting occurred the prisoner walked off from the deceased as if going out of the piazza and while deceased was standing with his side towards him. He turned however as he was walking away and fired at Smith, whose relative position still remained the same. Apart from the testimony of the prisoner it does not appear that deceased was even quarreling with prisoner just before the latter walked down the piazza and fired. Defendant's own version of the affair, if believed, would unquestionably put a different hue upon the transaction, but there was not only no other evidence of legal provocation but no other evidence of a quarrel, abuse or insult, that might have tended to show that he acted under

the influence of sudden passion.   While premeditation and
deliberation are not to be inferred as a matter of course
from the want either of legal provocation or of proof of
the use of provoking language, yet all such circumstances
may be considered by the jury in determining whether the
testimony is inconsistent with any other hypothesis than
that the prisoner acted upon a deliberately formed purpose.
*State* v. *Fuller*, 114 N. C., 885.   Kerr (in his work on
Homicide, Sec. 72) says: "The question whether there has
been deliberation is not ordinarily capable of actual proof,
but must be determined by the jury from the circum-
stances.   It has been said that an act is done with deliber-
ation however long or short a time intervenes after the
intent is formed and before it is executed, if the offender
has an opportunity to recollect the offence."   The test is
involved in the question whether the accused acted under
the influence of ungovernable passion, or whether there
was evidence of the exercise of reason and judgment.   The
conduct of the accused just before or immediately after the
killing would tend at least to show the state of mind at the
moment of inflicting the fatal wound.   In passing upon the
question whether the facts in a given case are sufficient to
show beyond a reasonable doubt that the killing was done
with deliberation and premeditation, while sudden passion
aroused by provocation that would neither excuse nor mit-
igate to manslaughter the killing with a deadly weapon, is
sufficient, if the homicide is committed under its immediate
influence, yet the want of provocation, the preparation of
a weapon, proof that there was no quarreling just before
the killing, may be considered by the jury, with other cir-
cumstances, in determining whether the act shall be attrib-
uted to sudden impulse or premeditated design.

   We think that there was no error in leaving the jury to
find upon the testimony whether or not the killing was

done in pursuance of a preconceived purpose deliberately formed. In arriving at a conclusion they would naturally look to the testimony as to the conduct of the prisoner at and about the time of the homicide, and the attendant circumstances, to throw light upon the question, rather than to a computation of the time intervening between the formation and execution of the purpose.

The guilt or innocence of the prisoner depended upon whether his intent to kill had been definitely formed, not upon the length of time that he had cherished the purpose.

For the reasons given the judgment is affirmed.

Affirmed.