## F. O. HOWE, APPELLANT, vs. HYER BROTHERS, APPELLEES.

1. Where the captain of a vessel belonging to the defendant had left with the garnishee a sum of money to be remitted to the defendant, who resided in a foreign country, and defendant and garnishee in correspondence both recognized the money as belonging to the defendant, and the garnishee would have remitted the money to the defendant, but for inability to obtain a bill of exchange to advantage before a writ of garnishment was served upon him, the evidence is sufficient to show the ownership of the defendant in such sum of money.

2. Where money is deposited with the garnishee to be remitted to the defendant, and it is contemplated by the guarnishee and the person making such deposit that the money shall not be preserved in specie, or remitted unchanged in form to the defendant, but that it should be invested in a bill of exchange for convenience of transmission, the garnishee is not in possession of specific chattels belonging to the defendant, and can set off against the garnishment a debt due by the defendant to him, the garnishee.

3. A garnishee is not by the service of the writ to be placed in any worse condition than if the defendant, his creditor, had brought suit upon the claim which is garnisheed.  As to the garnishee, the plaintiffs take the shoes of the defendant, and can assert only the rights of the latter.  The rule is, that while the garnishee may not, after the service of the writ, by his own action acquire set offs or counter claims against the principal debtor to the prejudice of the attaching creditor, he may properly avail himself of all claims fairly arising out of contract with the principal debtor which were in existence when the attachment commenced, and under or out of which his claim against the principal debtor arises.

4. If a defense of set off against a principal debtor claimed by a garnishee is such as would be allowed, against such principal debtor, it should be allowed against the garnisheeing creditor.

5. The garnishee plead only the usual statutory answer, i. e., a general denial of indebtedness to the defendant, and of the possession of goods, etc., belonging to him. The statute under which the trial was had provides that when such answer is traversed, "the court shall direct, without the formality of pleading. a jury to be empanelled ,* * to enquire what is the true amount due from such garnishee to the defendant." Under such statute a set off need not be formally pleaded to be available as a defense, but under such issue the court should allow any legal and proper evidence and defense that would show the true amount due from the garnishee to the defendant.

Appeal from the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*Blount & Blount*, for Appellant.

*Avery & Chipley*, for Appellees.

LIDDON, J.:

The appellees brought suit by attachment in the Circuit Court against one Robert Hunter, a nonresident, with garnishment against the appellant on January 26th, 1889. The appellant (garnishee) filed an affidavit of general denial of indebtedness to the defendant Hunter, and of the possession of any money, goods and chattels belonging to him. This affidavit being traversed and a trial had by the court (a jury being waived), a judgment was entered against the garnishee for $136.50, from which judgment he has appealed.

Appellant avers that such judgment was unsupported by the evidence. The testimony in the case was brief, only one witness being sworn for either party. F. O.

Howe, garnishee, testified as follows: "That on the 6th day of January, 1889, he, as a ship broker, effected a charter for the Br. Bk. True Briton, and by the terms of the charter party the owner, one Robert Hunter, became indebted to him (the witness) in the sum of three hundred and ———— dollars for commissions—the said commissions being due by the terms of the charter party upon signing thereof. That on the —— day of January, 1889, the master of the bark True Briton left with him $136.50 for remittance to the said Robert Hunter. That on the 26th day of January, 1889, he wrote a letter to the said Hunter informing him of the receipt of the money and stating that he (witness) would remit it to him (Hunter) as soon as he could buy a small bill of exchange.

JAN'Y. 26, '89.

Mr. Robt. Hunter, Greenock:

DEAR SIR—Yours 12th inst. duly to hand and has our attention. We last wrote you 8th inst. enclosing 2 copies 'True Briton' charter party, and now beg to hand you another copy herewith. We note that she is fixed outwards for Rio, and trust that she will make a quick round voyage. We have instructed Capt. Torrence with reference to employing only charterers' tugboat (the 'Echo') for inward towage, and have posted him on the other details of the charterer. The charterers, Messrs. H. Baars & Co., are first-class.

We duly received your cable of 21st asking when she would sail, and replied same day. We have now to advise you that she crossed the bar yesterday afternoon. We have cabled you to that effect yesterday morning.

Capt. Torrence has left a little money with us ($136.50)

for remittance to you, which we will send you in a few days, as soon as we can buy a small bill to advantage.

Yours truly,             F. O. HOWE.

That on the 27th day of January, 1889, the plaintiffs served a writ of garnishment upon him in an attachment suit brought by them against the said Robert Hunter. That on the 31st day of January, 1889, he (Howe) wrote him (Hunter) that the money had been garnisheed.

JAN'Y 31st, 1889.

Mr. Robert Hunter, Greenock:

DEAR SIR—We last wrote you on the 26th inst., advising sailing of 'True Briton,' also that Capt. Torrence had left $136.50 with us for remittance to you.

We must now advise you that the very next day this money was attached in our hands, in a suit brought by owners of the tug 'E. E. Simpson,' against R. Hunter and owners of 'True Briton,' to recover inward towage. This is a matter that we don't know much about, but, as we understand it, Capt. Torrence employed the Simpson to tow him in, and did not wait for charterers' boat (the 'Echo'), hence Messrs. Baars & Co. refused to pay the inward towage. Capt. Torrence claims that the captain of the 'Simpson' said he would look to Messrs. Baars & Co. for his pay, otherwise he should not have allowed him to tow him in. This the captain of the 'Simpson' denies, and claims that he was to receive the usual inward towage, say 10 cents per ton. In any event Capt. Torrence left without settling the matter, and they have brought suit as above, and consequently the $136.50 will be tied up until the suit is decided. I know very little about the right or wrong of the case, but it looks like too small an amount to get in a law suit about. If there were any steps you would like us to take in the

matter, please advise and we will do so. No doubt Capt. Torrence has written to you on the subject. I regret that such a misunderstanding should have occurred, and it is a pity that Capt. T. did not get the account fixed up before leaving. The owners of the Simpson say that the Captain promised to return and make a settlement, but went to sea without doing so.

If you wish the case contested, we will have to employ legal advice, and we should also have Capt. Torrence's deposition. Possibly the best course would be to endeavor to compromise the matter. Please advise by return mail what you wish us to do. The principal thing we are afraid of is, that in the absence of any evidence to the contrary, the case may go by default against the ship, and in that event she would have to pay the costs as well. Hence we think it might be well to arrange the matter if possible.

We have particularly instructed Capt. T. to take none other than charterers' tug (Echo) next voyage, so that there will be no repetition of this unpleasant business.                    Yours very truly,

FRED O. HOWE.

I received a letter from Hunter about 1st March:

GREENOCK, Feb'y 16, 1889.

To Fred. O. Howe, Esq., Pensacola:

DEAR SIR—Your favor of the 31st ult. to hand. Since it was written sad news has come. I am overwhelmed with sorrow; such a good ship, splendid prospects, and not a penny of insurance on hull; only £1500 on freight, out of which £800 for deficit before starting voyage to be met, and balance £700 to pay expenses, carpenters' bill here, seamen's wages and all.

Torrence should have settled dispute, but he appears to be stubborn. I was pleased when I saw you had so much, thinking it would reward you to some extent

'for all your trouble and prospective com. Please arrange as best you can, and I hope there will be something left for yourself.

I am wiped out of ship managing by this calamity; the loss to me is at least £2000, which I can not afford, and my co-owners will not be able to pay me any deficiency.

I see ship is to be sold, but suppose she will bring next to nothing. I have not had a word from Torrence since he wired Monday week (4th) of her total loss.                     Yours very truly,

R. Hunter.

That subsequent to garnishment, but before answer, he learned of the loss of the bark True Briton and of the insolvency of her owner, the said Hunter, and upon receiving this information he determined not to remit the amount left with him by the master of the True Briton, but to retain it as a part payment of the indebtedness of Hunter to him (the witness). That he does not know where the captain of the True Briton got the money from, nor for for what purpose he got it, nor why he wished to remit to Hunter. That he believes the sum demanded by plaintiffs for towage was the same in amount as that handed him by captain of the True Briton for remittance to Hunter, but does not know. That it is usual to collect commissions for chartering vessels after they are loaded, but not always, and that he had several times collected it upon signing the charter party."

Albert Hyer, one of the plaintiffs, testified as follows: "The day after the service of the writ of garnishment upon Mr. Howe I met him in the street and he said to me, 'It was a good thing you garnisheed me

when you did, for I was just about to send the money to Hunter.' "

The appellant claims that the court below had not sufficient evidence before it that the money placed with the garnishee by Capt. Torrence was the money of the defendant, and even if there had been proof of such facts, that the court should have allowed the garnishee to set-off the debt due him by the defendant against plaintiff's claim. Without making any lengthy analysis of the testimony, or argumentative demonstration of our conclusions, we think it sufficient to say that in our opinion the evidence establishes the ownership of the defendant in the money garnisheed.

The case, in our opinion, turns upon the point whether Howe, the garnishee, should have been allowed the amount of money in his hands belonging to the defendant as a set off against the plaintiffs' claim. There seems to be no contention that the defendant was not justly indebted to Howe, the garnishee, as claimed by him; nor is it doubted by either party that in a proper case the garnishee may set off against the claims of a plaintiff an indebtedness of the defendant to him (the garnishee). It is claimed by appellees that this right of set off does not apply to cases where specific chattels have been deposited with the garnishee. There is authority for the position assumed. 2 Wade on Attachment, sec. 513 and authorities cited in note 2. This rule proceeds upon the theory that a creditor can not hold the specific property, other than money, of a debtor which may be in his hands for the satisfaction of a debt. Such a course would be to deprive a man of his property without due course of law. We do not consider that under the circumstances of this case that the garnishee was in the possession of specific chattels belonging to the defendant Hunter. It was

not contemplated by Capt. Torrence, who left the money with him, that it should be preserved in specie, or remitted unchanged in form to the defendant. The effect of the transaction between Capt. Torrence and the garnishee was to make the latter a debtor to Hunter for the amount left with him for remittance to the latter. It was money received by Howe for the use of Hunter, and which it was contemplated to invest in a bill of exchange for convenience of transmission.

The statute provides that the service of the process shall bind all property in the hands of the garnishee at the time of such service (sec. 10, p. 550 McClellan's Digest), but it is not claimed by either party that the garnishee is prevented by the statute from availing himself of any proper set off against the defendant. We think it sufficiently appears by the evidence in this case that the defendant was indebted to the garnishee, and that such indebtedness arose and became due before the service of the garnishment, upon a contract made before such service. The rights of the plaintiffs against the garnishee are not greater than those of the defendant. The garnishee is not, by service of the writ, to be placed in any worse condition than if the defendant, his creditor, had brought suit, upon the claim which is garnisheed. As to the garnishee, the plaintiffs take the shoes of the defendant, the principal debtor, and can assert only the rights of the latter. For a lengthy and able discussion of this subject, reference is made to the case of North Chicago Rolling Mill Co. vs. St. Louis Ore & Steel Co., 152 U. S. 596, from which we quote the following as especially applicable to the facts of the present case: The "rule is, that while the garnishee may not, after service of the writ, by his own action acquire set offs or counter claims against the principal debtor to the

prejudice of the attaching creditor, he may properly avail himself of all claims fairly arising out of contracts with the principal debtor which were in existence when the attachment was commenced, and under or out of which his claim against the principal debtor arises.'' See also 2 Wade on Attachment, sec. 518, and authorities cited in note 6. The question is whether the set off is one that Howe, the garnishee could urge against Hunter, the defendant. We think he could do so without doubt. Therefore he could make the defense against the plaintiffs in this case.

It appears to us a hardship that the plaintiffs in this case, who preserved the fund by their garnishment, should lose it, while the garnishee, who was about to transmit it beyond the seas where it would have been of no benefit to either party, should profit by the plaintiffs' action. There is, however, no way to relieve the hardship without a violation of established legal principles.

Another point urged is that the garnishee should not have the benefit of the defense of a set off, because he did not specially plead such defense, but only plead the statutory answer, i. e., a general denial of indebtedness to the defendant, and of the possession of goods, etc., belonging to him. The proceeding was purely statutory. The statute under which the trial was had provides that when such answer is traversed, ''the court shall direct, without the formality of pleading, a jury to be empanelled    *    *    to enquire what is the true amount due from such garnishee to the defendant,'' etc. McClellan's Digest, sec. 6, p. 549. We do not think under such statute a set off need be formally pleaded in order to be available as a defense, but under such issue the court should allow any legal and.

proper evidence and defense that would show the true amount due from the garnishee to the defendant.

From what has been said, it follows that the judgment of the court below in favor of the plaintiffs was ·erroneous. It is reversed and a new trial ordered.