STATE v. ADAMS.

(Filed October 11, 1904).

1. HOMICIDE—*Evidence—Questions for Jury.*

In this prosecution for homicide the evidence is sufficient to be submitted to the jury on the question of the guilt of the defendant of murder in the first degree.

2. HOMICIDE—*Malice.*

It is not necessary to show malice in order to convict a person of murder.

3. HOMICIDE—*Evidence.*

In a prosecution for homicide it is error to instruct the jury that the fact that money was stolen from the house of the deceased tends to prove the guilt of the prisoner, it not being shown that the prisoner knew where the money was, nor that he had any of the stolen money.

4. APPEAL—*Instructions—Homicide—Exceptions and Objections.*

Though exceptions to instructions in a capital case are taken by the prisoner for the first time in the supreme court, the court will consider them.

Indictment against Will Adams, heard by *Judge George H. Brown* and a jury, at March Term, 1904, of the Superior Court of Wake County. From a verdict of guilty and judgment thereon the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*William B. Snow* and *E. M. Shaffer,* for the defendant.

Montgomery, J. The prisoner was convicted of murder in the first degree. There was no fault found in the course of the trial with any of the State's evidence, and the prisoner introduced none. The exceptions of the prisoner relate to and are connected with the refusal of the Judge to hold, or to instruct the jury in one form or another, that there was no evidence tending to connect the prisoner with the homicide. The enormity of the crime and its ghastly features, together with the fact that the evidence against the prisoner is entirely circumstantial, have caused us to examine with great care the whole evidence.

The husband of the murdered woman, about sunrise on the 22d of last January, left his wife and several children at their home, about twelve miles from Raleigh, alive and well. When he returned, about sun-down, he found his wife dead in a cotton field a hundred yards from the house, lying on her face, with her skull crushed, and two of the children so badly beaten and injured that they died on the same day. The community naturally was filled with terror and excitement. Somehow or other the husband's suspicions were directed against the prisoner and he at once had him arrested. There was evidence that the prisoner, who lived a mile away, was seen on the premises and at the corner of the dwelling-house of the deceased at 1 o'clock on the day of the homicide, and four hours later secreting himself under some bushes near the public road a half-mile away. The tracks leading

from the house and to and from the dead body and in the direction of the house of the prisoner were described by one of the witnesses as being those of a man who wore a number eleven shoe and who walked in what is called a "slew-footed" manner—that is, with feet set out in a right and left angle. That witness further said that he knew and had often seen the tracks of the prisoner, and that they were identical in size with those around the house and near the dead body, and that the prisoner walked with his feet at right angles.   In addition, the prisoner was shown to have made contradictory statements as to his whereabouts on the day of the homicide.

We are of the opinion that the evidence, while not of the strongest character against the prisoner, was properly submitted to the jury, which body alone could pass upon its strength and weight.

But there was an error committed in the trial below which necessitates a new trial.   The State, in its efforts to prove a motive on the part of the prisoner for the homicide, introduced evidence tending to show that robbery—pecuniary gain—was the incentive to the murder.   The prosecutor, the husband of the deceased, testified that he left six dollars in a drawer at the house on the morning of the homicide, and that when he returned the money had been stolen or abstracted. He was asked if the prisoner knew of his having money in the house, and his only answer was that he had never told him so.   There was no evidence to the effect that the prisoner knew there was any money in the house.   When he was arrested he was thoroughly searched to the body, the pockets of his clothing also being examined, and only two half-dollars and four one-cent pieces were found.   The four one-cent pieces were paid to him the day before as a balance due for labor, and the prosecutor did not testify that the two silver half-dollar pieces were a portion of his money.   Upon that evidence his Honor instructed the jury that "the fact that

money was taken from the house, and all these circumstances, tend to prove the fact that not only was Mary Bridgers killed, but that she was killed by the prisoner, and was killed in pursuance of a premeditated, deliberate purpose." There was error in that instruction. It is not necessary to the conviction of one accused of murder that a motive for the homicide should be shown. The intention is the matter necessary to be shown, and not the motive. Where the evidence is circumstantial only, jurors ordinarily require that a motive be proved for the committal of the homicide—that is, a motive, or the want of a motive, has an important bearing upon the probability of the guilt or innocence of the accused. Therefore it is of the highest consequence to the prisoner that if an attempt to prove a motive for his act is made, it should be shown by strictly legal evidence and that all reference thereto by the Judge in his instructions to the jury shall be clear and accurate. In this case there was no evidence of motive against the prisoner. Where pecuniary advantage—robbery—is charged to be the motive, it must be shown that the prisoner knew the facts at the time of the killing. 2 Am. & Eng. Ency. Law, 215; *People v. Morgan,* 124 Mich., 527; *Gillum v. State,* 62 Miss., 547; *Cockrill v. State,* 32 Tex. Cr. Rep., 585.

There was no evidence, as we have said, that the prisoner knew there was any money in the house, and none that any part of it was found on him when he was searched.

Exception was taken to the instructions of the Court below for the first time in this Court, but the Attorney-General agreed that it might be considered here, and this Court would be slow to refuse in a case involving the life of the prisoner, to give him the benefit of a point upon the technical ground that an exception was not entered in the Court below. *State v. Morris,* 84 N. C., 761.

New Trial.