THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EMIL TOTTERMAN, Appellant.

MURDER — SUFFICIENCY OF EVIDENCE AS TO PREMEDITATION AND DELIBERATION. The evidence upon the trial of an indictment for murder reviewed and held sufficient to establish the premeditation and deliberation required under the statute to constitute murder in the first degree.

(Argued April 14, 1905; decided May 2, 1905.)

APPEAL from a judgment of the Supreme Court, rendered March 2, 1904, at a Trial Term for the county of New York upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Frederick E. Goldsmith* and *Henry J. Goldsmith* for appellant. The prosecution have failed to show premeditation and deliberation. (Penal Code, § 183; *People* v. *Majone*, 91 N. Y. 211; *People* v. *Boggiano*, 179 N. Y. 267; *Leighton* v. *People*, 88 N. Y. 117; *People* v. *Conroy*, 97 N. Y. 62; *People* v. *Hawkins*, 109 N. Y. 408; *People* v. *Johnson*, 139 N. Y. 358; *People* v. *Constantino*, 153 N. Y. 24; *People* v. *Kennedy*, 159 N. Y. 346; *People* v. *Koenig*, 180 N. Y. 155; *People* v. *Leighton*, 1 N. Y. Cr. Rep. 471.)

*William Travers Jerome, District Attorney* (*Howard S. Gans* of counsel), for respondent. There was sufficient evi-

25

dence .upon the issue of premeditation and deliberation to require the submission of this issue to the jury and to justify their verdict. (*People* v. *Conroy,* 97 N. Y. 62; *People* v. *Schmidt,* 168 N. Y. 568; *People* v. *Ferraro,* 161 N. Y. 375; *People* v. *Beckwith,* 103 N. Y. 360.)

CULLEN, Ch. J. While the guilt of the appellant was established by circumstantial evidence, that evidence is exceptionally strong and leaves no room for doubt. The murdered woman was a strumpet. Shortly after ten o'clock on the evening of December 19th, 1903, she entered the barroom of a hotel of low character in James slip, in the city of New York. In a few minutes a man carrying a bundle came into the barroom. He got into conversation with the deceased, sat down at the table with her, where they drank together. After a short time the man and the deceased were shown by a woman servant to a room upstairs, into which they retired. This servant had some conversation with the man. Twice the deceased and the man sent down to the barroom for something to drink. On the first occasion the order was taken by the servant already mentioned, and the drinks taken by her to the room which the deceased and the man were occupying. On the second occasion the same thing was done by another woman servant of the hotel. After this the door of the room was bolted on the inside. The proprietor of the saloon or hotel, one James Kelly, with his barkeeper, remained up during the night to see if any other customers might seek to come in. No one, however, came. About eight o'clock in the morning Kelly went to bed. Shortly afterwards one of the women servants above referred to found the door of the room unlocked, entered and saw the deceased lying on the bed, as the witness thought, asleep; the man had disappeared. In the afternoon the woman servant again entered the room, found the deceased in the same position as before, but on making examination at once discovered that she was dead. The police were called in and the body removed to the morgue, where subsequently an autopsy was had. It appeared

that the deceased had come to her death by strangulation and by a stab wound through the heart. In addition to that through the heart, other wounds had been inflicted by a sharp instrument; one in the abdomen, one across her breast, besides several in other parts of her body unnecessary to detail. There were found in the room, saturated with blood, a shirt and an undershirt of the man, also a box in wrapping paper.

The evidence to connect the defendant, who was arrested on Monday, with the crime, briefly, is as follows: First, he was positively identified by Kelly and the two women as the man who had accompanied the deceased to the room on the night of the crime. The box referred to as found in the room was a shoe box bearing the label of Meigs & Company, Bridgeport, Conn., and on it was written the names "Fred B. Belano" and "Emil Totterman." In the box were two sales slips of the Bridgeport firm and a pair of old shoes. It was proved that on the morning of the homicide the defendant, who was a sailor, had been discharged at Bridgeport, Connecticut, from the schooner "Fred B. Belano." Two salesmen from Meigs & Company positively identified the defendant as a man to whom they sold goods on that morning. The first sold him a sweater for three dollars and he identified the sales ticket found in the box as being in his handwriting and representing that sale. The defendant put the sweater on and as he wanted to purchase also a pair of shoes he was taken to the second salesman to whom the ticket for the sweater was given. This last salesman testified that the defendant tried on several pairs of shoes till finally one was found satisfactory. This the defendant bought and put on, giving his old shoes to the salesman to be wrapped up. The old shoes were placed in the shoe box with the ticket made by the first salesman for the sweater, as well as the second one made by this witness for the shoes. The witness positively identified the shoes found in the room where the deceased was murdered as being the same ones that the defendant had worn when he purchased the new pair. The sweater which the deceased was wearing at the time of his arrest was testified by the first

salesman to be the one he had sold on the morning of the murder. It was also proved by a member of the crew of the Belano that after their discharge from the vessel the defend-ant went into Meigs' store, the witness remaining on the side-walk; that the defendant came out of the store with a box or bundle; that shortly afterwards they took a train to New York city, arriving there about 8 p. m., and at the station took the elevated railroad to go downtown. The witness got off at Fourteenth street, leaving the defendant in the train. A police officer testified that about two o'clock in the morning of December 20th he found the defendant trying to obtain admission into a place on South street. The defendant said that he wished to go some place to spend the night and the officer referred him to a lodging house in the vicinity. The defendant had shipped on the Belano under the name of Carl Nelson, but his true name was Emil Totterman. Proof was given tending to show that such name and the words "Fred B. Belano," written on the shoe box, were in the handwriting of the defendant. A chemical examination of spots on the trousers of the defendant, worn at the time of his arrest, and on a knife then found on him, disclosed they were caused by human blood. No evidence was given for the defense.

From this summary of the evidence it would seem impossi-ble to doubt that the defendant was the man who accompanied the deceased to the room in the James slip house on the night of the homicide. It seems equally impossible to doubt that the man who accompanied her on that occasion was the man who caused her death. He left stealthily, no one discovering that he had gone out. He left his bundle there. No one else had access to the room. Indeed, counsel for the appellant does not contend on this appeal that the evidence failed to prove that the defendant committed the homicide. His sole claim is that it was insufficient to establish the premeditation and deliberation required under the statute to constitute mur-der in the first degree. This claim we deem destitute of merit. Without arguing it we can only say that the nature and repetition of the wounds with the knife, as well as the

strangulation of the deceased, were amply sufficient to justify the verdict in this respect.

The trial was eminently fair, the charge to the jury accurate in law and absolutely impartial. The case is exceptionally free from claim of error. The few exceptions taken to the rulings of the court were without merit and have not been argued here. The verdict was warranted by the proof and the judgment entered thereon should be affirmed.

O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur; GRAY, J., absent.

Judgment of conviction affirmed.