NATHAN LOWE, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed July 27, 1925.

1. Circumstantial evidence may be said to be the inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts. It is in the nature of things frequently necessary to resort to it to prove guilt in criminal proceedings.

2. Circumstantial evidence alone is therefore sufficient to support a verdict of the most heinous crime, provided the jury believe beyond a reasonable doubt that the accused is guilty upon the evidence, and this cannot be when the evidence is entirely consistent with innocence.

3. Under our Statute murder in the first degree must be perpetrated with a "premeditated design to effect the death of the person killed." Premeditation is therefore an essential incident of murder in the first degree, and like other facts must be determined by the jury.

4. Premeditation involves a prior intention to do the act in question. It is not necessary, however, that this intention should have been conceived for any particular period of time. It is as much premeditation if it entered into the mind of the guilty agent a moment before the act, as if it entered ten years before.

5. The fatal blow must not be the incident of mania or a sudden paroxysm or heat of passion such as suspends the cool normal state of the mind but as to whether there has been such premeditation is a question for the jury to be determined by them from a consideration of all the facts under the instructions given by the court.

6. Whether a homicide was committed with premeditated design to kill or in a sudden paroxysm of passion is for the jury to determine from the evidence on this point. They are also the judges of the credibility and weight of the evidence.

A Writ of Error to the Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment affirmed.

*J. P. Huntley,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *Marvin C. McIntosh,* Assistant, for Defendant in Error.

TERRELL, J.—Nathan Lowe was indicted, tried and convicted for murder in the first degree. The sentence of death was imposed and he brings his case here by writ of error seeking reversal on certain rulings of the trial court with respect to the admission or exclusion of evidence, the denial of the motion for an instructed verdict in his favor, and the refusal to grant his motion for a new trial which was based primarily on the insufficiency of the evidence to sustain the verdict.

The evidence is very largely circumstantial and is to the effect that the body of Florence Henderson was found concealed in a gallberry and palmetto patch near McCloskey's turpentine quarters some miles east of Lake City about the 26th of August, A. D. 1924. Her neck was broken and there was an indentation made by a blunt instrument on the side of her head above the ear which the examining physician testified would have been fatal. There were also minor bruises on various parts of the body. W. L. Gilbert testified that about midnight of the night before the body was recovered the husband of the deceased came to his house

and stated that his wife was missing, that he (Gilbert) got up and went to the negro quarters and found several negroes congregated in .front of the house of the deceased, that he made inquiry but none of them knew anything about her when he told them that they would all make a little search for her. He (Gilbert) called some of the negroes by name and also called Nathan Lowe, the defendant, who answered that he would be ready in a minute. The search was then started and as they passed defendant's house he said wait a minute and stepped into his house at the side door, brought out a bundle with him and ran to the other end of the house, but returned in a very short time and stated that he was ready. Gilbert sent two of the negroes back to see what the bundle was Lowe came out with and put under his house and they reported that it was some wet clothes. The search was continued in a kind of circle without out results when all returned to or near where they had started and Gilbert stated to them that he would hold them there in custody until daylight. Nathan Lowe responded to this statement with three loud grunts, umph, umph, umph. Gilbert further testified that the place he held them in custody until daylight was in front of Nathan Lowe's house, that he, Lowe, kept going in and out of his house the balance of the night, first in the kitchen and then in the bedroom, that he would lie down on the floor and then on the bed, that he was very restless and changed his clothes three times during the night, would wallow on the floor, pack his suitcase and hang his gun in a different place. Just before daylight Gilbert examined the clothes that Lowe had put in the suitcase and found them to be the same ones he had seen on Lowe late the afternoon before when he (Lowe) came from fishing with a sack of fish.

About three o'clock in the morning Gilbert examined the wet clothes that Lowe had put under the end of his house

and found them to be stained with blood, he also sent for Mr. Willington and as soon as it was daylight Gilbert, Willington, and the six or eight negroes that he (Gilbert) had had in custody started anew the search for the deceased. The search had proceeded about one-quarter of a mile when one man announced that he had found the body. Gilbert, who had Lowe with him, started to where the body was and Lowe acted like he wanted to cry and said he did not want to see her. Gilbert further testified that there were two places near where the body was found where the grass and bushes were "tromped down," indicating a scuffle, that there was some blood at one of the places and at the other one a scrap off of Lowe's "britches" and a scrap off of his jumper was picked up and that these scraps "fitted right in the places" and came off the clothes he (Lowe) had on when last seen the evening before.

The testimony of Gilbert was corroborated in every material detail by other witnesses, who in addition testified that they saw blood on Lowe's jumper, that Lowe and the deceased were in the commissary together between seven-thirty and eight o'clock the afternoon before the body was found, that about eight-thirty the same evening Lowe was seen at the house of the deceased chasing her from her house toward the woods in the direction where her body was found and was heard to slap her and was heard to say to her, "You do not want to mess with me, I will kill you, woman." The evidence also shows that about five minutes after Lowe chased her from her house she was heard to "hollow" twice, that Lowe was gone about an hour from the time he chased her off and returned without her, that he had previously been heard fussing with the deceased in her kitchen, that he returned from the chase excited and trembling in his talk, that he was seen with a hoe about his house looking constantly in the direction deceased was found and remarked

to one of the witnesses after his return from the chase that "the rat is out and the cat is about to catch him." Lowe in his own behalf denied every material allegation testified to for the State.

Assignments one to six inclusive relate to the objections of defendant to testimony introduced on the part of the State. We have considered these assignments carefully and do not think any of them constitute reversible error.

The seventh assignment is grounded on the refusal of the trial court to grant defendant's motion for an instructed verdict, and the eighth assignment alleges error in his refusal to grant defendant's motion for a new trial. These assignments treat only the sufficiency of circumstantial evidence to support a verdict for homicide and what showing must be made to constitute premeditation. We will discuss them together.

Circumstantial evidence may be said to be the inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts   It is in the nature of things frequently necessary to resort to it to prove guilt in criminal proceedings. The criminal always, if possible to do so, selects the occasion most favorable to concealment to indulge his appetite for crime and lust when no eye-witnesses are about to behold him. Circumstantial evidence alone is therefore sufficient to support a verdict of guilty of the most heinous crime, provided the jury believe beyond a reasonable doubt that the accused is guilty upon the evidence, and this cannot be when the evidence is entirely consistent with innocence. Vernon v. U. S., 146 Fed. 121; U. S. v. Greenbaum, 252 Fed. 259; Martin v. State, 125 Ala. 64, 28 So. 92; Underhill's Criminal Evidence (3rd ed.) 14.

It has been said that witnesses may lie but that circumstances never do. In this case all the circumstances from

which guilt may be inferred are proven by the direct evidence of witnesses who saw them. When taken in connection with positive facts testified to and which the jury evidently took to be true beyond a reasonable doubt they form a complete chain pointing to the guilt of the defendant and are irreconcilable with any reasonable theory of his innocence and exclude to a moral certainty every hypothesis but that of his guilt, which is all the law requires. Gantling v. State, 40 Fla. 237, 23 So. 857 and cases cited; Underhill's Criminal Evidence (3rd ed.) 17, citing many cases.

Does the record in this case show premeditation? Under our statute murder in the first degree must be perpetrated with a "premeditated design to effect the death of the person killed." Premeditation is therefore an essential incident of murder in the first degree and like other facts must be determined by the jury. Denham v. State, 22 Fla. 664; Savage v. State, 18 Fla. 909; Ernest v. State, 20 Fla. 383; Carter v. State, 22 Fla. 553; Adams v. State, 28 Fla. 511, 10 So. 106; Lovett v. State, 30 Fla. 142, 11 So. 550; Wescott v. State, 31 Fla. 458, 12 So. 846; Kelley v. State, 39 Fla. 122, 22 So. 303; Barnhill v. State, 56 Fla. 16, 48 So. 251; Cook v. State, 46 Fla. 20, 35 So. 665.

Premeditation involves a prior intention to do the act in question. It is not necessary, however, that this intention should have been conceived for any particular period of time. It is as much premeditation if it entered into the mind of the guilty agent a moment before the act, as if it entered ten years before. Hicks v. State, 25 Fla. 525, 6 So. 441; Ernest v. State, 20 Fla. 383; Yates v. State, 26 Fla. 484, 7 So. 880; State v. Banks, 143 N. C. 652, 57 S. E. 174; Wharton's Criminal Law, Vol. 1 (11th ed.) 688, citing many cases; State v. Bynum (N. C.), 95 S. E. 101; People v. Totterman, 74 N. E. 222.

The Supreme Court of North Carolina, in State v. Mc-Cormie, 116 N. C. 1033, 21 S. E. 693, states the rule as follows:

It is not essential in order to show prima facie premeditation on the part of the prisoner that there should be evidence of preconceived purpose to kill formed at a time anterior to the meeting when it was carried into execution. It is sufficient if the prisoner deliberately determined to kill before inflicting the mortal wound. If there were such purpose deliberately formed the interval, if only a moment before its execution, is immaterial.

It is also stated by Wharton that the reason for the above rule is obvious. In the first place if in order to make murder in the first degree, it is necessary that the idea should be proved to have been conceived a week or a day ahead, there will be no murder in the first degree at all, for the guilty party will take care that the conception be concealed until the limitation is passed. In the second place, all psychological investigation shows that the process of mental conception lies beyond the scrutiny of exact observation.

Considering the question of premeditation in Commonwealth v. Drum, 58 Pa. 9, the court said:

"In this case we have to deal only with that kind of murder in the first degree described as wilful, deliberate, and premeditated. Many cases have been decided under this clause, in all of which it has been held that the intention to kill is the essence of the offense. Therefore, if an intention to kill exists, it is wilful. If this intention be accompanied by such circumstances as evidence a mind fully conscious of its own purpose and design, it is deliberate; and if sufficient time be afforded to enable the mind fully to frame and to design to kill, and to select the instrument, or to frame the plan to carry his design into execution, it is premeditated."

Speaking on premeditation in the absence of motive in Adams v. State, 138 N. C. 697, 50 S. E. 768, the court said:

"Murder may be committed without any motive. It is the intention, deliberately formed after premeditation, so that it becomes a definite purpose, to kill. And a consequent killing without legal provocation or excuse constitutes murder in the first degree. The existence of motive may be evidence to show the degree of the offense, or to establish the identity of the defendant as the slayer, but motive is not an essential element of the crime, nor is it indispensable to a conviction of the person charged with its commission." State v. Wilcox, 132 N. C. 1143 (44 S. E. 625) ; State v. Adams, 136 N. C. 620, 48 S. E. 589.

So far as we have been able to find the courts generally hold that there must be some sort of premeditation, that the fatal blow must not be the incident of mania or a sudden paroxysm or heat of passion such as suspends the cool, normal state of the mind, but as to whether there has been such premeditation is a question for the jury to be determined by them from a consideration of all the facts under the instructions given them by the court. Cook v. State, 46 Fla. 20, 35 So. 665 ; Barnhill v. State, 36 Fla. 16, 48 So. 251; State v. Daniels, 139 N. C. 549, 51 S. E. 858; People v. Totterman (N. Y.) 74 N. E. 222; People v. Ferraio (N. Y.) 55 N. E. 931; State v. Bynum, supra.

The evident considerations influencing the jury in this case were that defendant was seen in the commissary with the deceased about eight o'clock on the evening of the homicide, that they were later seen and heard quarreling at the home of deceased, that defendant was seen to chase the deceased from her house in the direction of where her body was found, telling her that he would kill her, and that he returned alone in not exceeding an hour, that defendant was nervous and excited the balance of the night and deceased

was found soon after daylight the next morning with her neck broken and an indentation on the side of her head produced by a blunt instrument that would have caused death; that a patch each from the britches and jumper of defendant were found at the place where deceased was killed, that said patches were completely identified and bloodstains were found on the clothes of defendant which he attempted to wash out and which clothes were those worn by defendant when last seen with the deceased shortly before she was slain, that defendant was away from his place for an hour or more following the time he chased the deceased in the direction where her body was recovered and during this time she was heard to "hollow" twice.

The deceased was a small woman weighing about ninety-five pounds and there is evidence tending to show that the homicide might have been committed in an attempt to rape, which under our statute would be murder in the first degree. The direct evidence of the homicide was circumstantial, but it was for the jury to resolve from the array of facts here stated whether or not defendant was guilty. In this premeditation may be inferred from such circumstances as declarations of intent to kill before or after the crime, previous difficulty between the parties, absence of adequate provocation, remarks and conduct indicating preparation, lying in wait, character of the weapon employed, the nature and number of the blows or wounds inflicted, locality of the wounds, place of the crime, and subsequent acts or statements. 30 C. J. 293.

The evidence satisfied the jury that the defendant committed the crime charged against him and the circumstances of the killing by breaking her neck, inflicting a second mortal wound on the side of her head, bruising the body in other places and then concealing it was evidence, if believed, from which the jury could infer that the killing was deliberate

and wilful and not a sudden paroxysm of passion, that it was premeditated and this if only for a moment's duration was sufficient to make it murder in the first degree. The infliction of two mortal wounds would seem to be conclusive on this point.

Whether a homicide was committed with premeditated design to kill or in a sudden paroxysm of passion is for the jury to determine from the evidence on this point. They are also the judges of the sufficiency or weight of the evidence. State v. Bynum, *supra;* People v. Totterman, *supra.*

The record has been examined carefully and is ample basis for reasonable men to have reached the verdict rendered. No error being made to appear the judgment below is affirmed.

WEST, C. J., AND WHITFIELD, STRUM AND BROWN, J. J., concur.