Although I agree with the majority's conclusions in parts I and III of the opinion, I must respectfully dissent from the majority's conclusion in part II. Among other charges, Johnson was charged with violating § 15-20-26(c), Ala. Code 1975, which provides that "[n]o adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides." I do not believe that the State presented a prima facie case that Johnson established a residence or other living accommodation where a minor resides, a violation of § 15-20-26(c).
The only evidence that a minor child resided in the same residence as Johnson was provided by Cpl. Craig Sawyer. Corporal Sawyer testified that after failing to find Johnson at 543 Era Drive, Johnson's registered residence, he went to a house located at 7452 Mary's Lane. Upon arriving at that abode Sawyer found Johnson, who stated that the residence on Mary's Lane was his residence.
The only evidence that a minor child lived at 7452 Mary's Lane consisted of the following testimony from Corporal Sawyer:
 "Q. [The prosecutor:] Corporal Sawyer, when you went to Mary's Lane and encountered the [Johnson], did it — what *Page 957 
was the appearance to you? Did it appear that other people were residing in that location?
 "A. It appeared to me, based on my observation, to be a single family residence of Mr. Johnson, an adult female and several children."
(R. 89.)
 "Q. [The prosecutor:] And you testified earlier, I believe, that you witnessed children at the residence.
 "A. As I said, when he opened the door, he was standing inside the residence. I was outside on the porch. I could see past him into the house, what appeared to be a dining room type setting. And there was a female, and I remember distinctly seeing two children sitting at the table eating a meal.
 "Q. Okay. And it appeared to you that they resided there?
 "A. Based on the toys and stuff on the living room floor, the clothes that I could see around, it appeared there was a single family dwelling. They all lived there."
(R. 92.)
 "Q. [Defense counsel:] Yes, sir. On 11/7/05, when she notified me, I went to Era Drive. And I also went to — if you look down a couple of sentences. If I could read it to you. `I went to the sole home on Mary's Lane, there was no answer at the door, but there was a van in the driveway registered to a Mary Johnson.' And that all occurred on the same day, November 7."
(R. 98.)
 "Q. [Defense counsel:] Okay. Corporal Sawyer, I'm about to go back for just a minute. You testified earlier that when you arrived at the address, that you said that you saw children at that address; is that correct?
 "A. That's correct.
 "Q. Would that — would that have been something important at the time, that if you had known that — if you had of seen children there, would that have been an important fact for you to have remembered later on?
 "A. Yes, sir.
 "Q. And simply because if there were children living there, he wasn't supposed to be living with children; is that correct?
 "A. That's correct.
 "Q. Can you point to me when you filed your report? What was the date that you filed your report?
 "A. My report was completed November 28, 2005.
 "Q. Okay. And can you point out anywhere in your report where you listed that there were children at that address?
 "A. It's quite possible I did not list it. But I do remember seeing the children.
 "Q. Okay. Do you think that you would remember something like that to put it in a report when you wrote the report? Would that have been important enough for you to write down and put in a report?
 "A. Depending on the charges that I was seeking. At the time I completed the report, the charges that I was seeking was the fact that he had changed his residency without notifying us. The charges of living with minors, if I'm not mistaken, came later from the Grand Jury."
(R. 102-03.)
In this case there was no evidence that the childrenresided at the address 7452 Mary's Lane. The jury was required to speculate that they did so based on one observation of them eating supper and the fact that there were "toys and stuff on the living room floor, the clothes that I could see around." (R. 92.) *Page 958 
As stated in Ex parte Mauricio, 523 So.2d 87, 94
(Ala. 1987):
 "A finding of guilt from circumstantial evidence is based on the `inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts.' Dolvin v. State, 391 So.2d 133, 137
(Ala. 1980), citing Lowe v. State, 90 Fla. 255, 105 So. 829 (1925). This is to be distinguished from a supposition, which is `a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur.' Ex parte Williams, 468 So.2d 99, 101 (Ala. 1985), citing L. N. R.R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S.W.2d 257 (1929). `Mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence.' Williams, 468 So.2d at 101."
For the forgoing reasons I would reverse that part of the judgment and render a judgment in favor of Johnson based on his claim that the State presented insufficient evidence to sustain a conviction for violating § 15-20-26(c), Ala. Code 1975. Therefore, I must respectfully dissent.