WALTER MATTHEWS, alias WALTER MATHIS, v. STATE.

177 So. 321.

Division A.

Opinion Filed November 15, 1937.

Rehearing Denied December 18, 1937.

*J. B. Hodges* and *Guy Gillen,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood, Assistant Attorney General,* for the State.

BUFORD, J.—The writ of error brings for review judgment of conviction in the first degree without recommendation to mercy.

Plaintiff in error, Walter Matthews, killed Sam Jenkins in Columbia County, Florida. The evidence adduced by the State shows that Matthews had been having some trouble with his wife who was a sister of Jenkins' wife, that neither Jenkins nor his wife were involved in the trouble between Matthews and his wife. On the evening of the homicide Matthews went home and had a conversation with his wife. That conversation resulted in alarming her so that she left the home where they lived immediately after he left there, probably around seven o'clock. A little later Matthews went to Jenkins home and inquired for Jenkins. At that time he carried a pistol in his hand. Jenkins' wife advised Matthews that he (Jenkins) was not at home, but was probably at the Government hospital. Matthews returned to Jenkins' home shortly thereafter and again inquired for Jenkins and was again told that he was not at home. At that time he carried a pistol in his right hand. Jenkins' wife became alarmed and sent her daughter to fetch her husband home. His wife told him (Jenkins) of Matthews having been there twice with a gun in his hand and inquiring for him. Shortly thereafter Matthews again came to the Jenkins' home and knocked at the door. Jenkins went out.

Matthews asked if his (Matthews') wife, whom he called "Kid," was there. Jenkins told him "No." He then asked Jenkins if he knew where she was and Jenkins told him "No." He then told Jenkins, "You are a dam liar." He then shot and killed Jenkins. The defense interposed was that of self-defense.

There is no material conflict between the plaintiff in error's testimony and that of the State's witnesses up until Matthews' third appearance at the Jenkins home except that Matthews testified that on both earlier trips to the Jenkins home he inquired for his wife and not for Jenkins.

His statement of the occurrence on the third trip to the Jenkins home, however, is contrary to that of every other witness who testified in the case. His statement was in effect that he stopped his car in the street in front of the Jenkins home and hailed; that Jenkins came out to the car with his right hand in his overcoat pocket; that Jenkins immediately began to upbraid Matthews for coming to his house inquiring for his (Matthews') wife, and making his (Jenkins') wife nervous, and that Jenkins told Matthews that he would not stand for that and that he would kill Matthews before he would stand for it any longer. He thereupon drew his pistol from the coat pocket, whereupon Matthews turned and got his pistol out of his car and shot Jenkins because he believed that Jenkins was about to kill him.

The jury evidently did not believe any of Matthews' story about the killing. The testimony given by disinterested witnesses showed beyond question that when Matthews shot Jenkins they were both on Jenkins' front porch.

The evidence is conclusive that Jenkins did go out of his door armed with a pistol, probably in his coat pocket. The pistol was found immediately after the shooting near where

Jenkins fell on the porch, but the preponderance of the evidence also shows that Matthews was the aggressor in bringing on the difficulty and was not free from fault. Therefore, he was not in position to have the benefit incident to acting in self-defense.

Plaintiff in error has presented three questions for disposition. They are as follows:

"Question No. 1: Can a person charged with homicide show on cross-examination of State witness after such witness has testified that deceased owned a firearm, that the deceased armed himself a few seconds before the fatal altercation between the defendant and deceased?"

"Question No. 2: Can a defendant in a homicide case, testifying in his own behalf, after the evidence of the State has shown that the deceased was a brother-in-law of the defendant, that the two families were very friendly, that the wives of each were sisters, that there had been some domestic trouble between the defendant and his wife on account of an outside man, show the friendly relations existing between himself and the deceased, the details of the domestic difficulty between the defendant and his wife in regard to the outside man about two months before the homicide and on the same day of the homicide, together with the plans made on the day of the homicide by the defendant and the deceased as to their friendly association in the next day or two?"

"Question No. 3: Can a verdict of murder in the first degree be sustained, when the evidence shows that defendant and the deceased were friendly, had married sisters, lived in the same community, worked together, hunted together, conferred shortly before the homicide; that the wife of the defendant had engaged in an affair with an outsider, had discussed it with her husband shortly before homicide,

after which the wife fled the home, fled the county, return-
ing several days after homicide; that defendant left home
after discussion, to look for someone, returning, found wife
had fled; that he went three times to the home of brother-
in-law, deceased, inquiring for deceased, found deceased on
the third visit, when the defendant inquired for wife, at
which time deceased became incensed at visits of defendant;
both were armed, when the two engaged in difficulty, re-
sulting in death of deceased, after which defendant under-
took to care for deceased, notified physician and members
of family of deceased of fatal shooting,"

The first question is based upon the following incident:
(The Sheriff of Columbia County was on the stand testi-
fying as a witness for the State.)

"Q.   Did Sam's wife ever identify that pistol?

"A.   She said the automatic belonged to Sam.

"Q.   Did she say she saw him carry it out that night?

"A.   When Walter knocked at the door Sam always taken
his gun."

"JUDGE KELLY:   We object to that as hearsay.

"THE COURT:   Objection sustained.   To which ruling the
defendant did then and there except.   Exception noted.

"MR. HODGES:   That is all.   She did say this was Sam's
gun (indicating)?

"A.   Yes, sir."

So the record shows that while objection to the question
was sustained the question has been answered, if we may
consider the statement made by the Sheriff, "When Walter
knocked at the door Sam always taken his gun," as being
answer to the question, "Did she say she saw him carry it
out that night?"   There was no motion to strike the answer
and, therefore, the testimony for whatever it was worth,
remained before the jury and no harmful error was com-

mitted. See Roberts v. State, 90 Fla. 779, 107 Sou. 242, wherein we said:

"The fourth assignment of error rests upon the action of the Court in sustaining the State's objection to a question propounded to the defendant, who testified as a witness in his own behalf, after he had answered the question in the affirmative and the answer was not stricken and the jury were not instructed to disregard it.

"The question was: 'At the time you say you drew your pistol did you believe your life was in danger or you were in danger of being done great bodily harm by the Nichols or Blocker?' The witness answered: Yes, sir.' The State attorney then objected to the question and the objection was sustained, but the testimony of the witness as to that fact was not stricken from the record. From anything to the contrary indicated by the record the State attorney after obtaining a favorable ruling upon his objection abandoned the point and allowed the answer to remain in evidence."

Aside from this, the question was clearly objectionable as eliciting hearsay testimony and not being admissible as impeaching testimony because no predicate for impeachment in this regard has been laid. Kirby v. State, 44 Fla. 81, 32 Sou. 936; Owen v. State, 65 Fla. 483, 62 Sou. 651; Gee v. State, 61 Fla. 22, 54 Sou. 458.

The second question is based upon an occurrence which transpired while the defendant was testifying as a witness in his own behalf, which occurrence was as follows:

"Q.  Did you come home in October?

"JUDGE KELLY:  We object as irrelevant and immaterial.

"THE COURT:  Objection sustained.  To which ruling the defendant excepted.  Exception noted.

"MR. HODGES:  I believe I can show its materiality.

"THE COURT: I doubt it, Colonel. Objection sustained. To which ruling the defendant excepted. Exception noted.

"Q. State whether or not on one occasion of your coming home last year whether you found another man in your house.

"JUDGE KELLY: We object. It wouldn't affect Jenkins.

"THE COURT: Objection sustained. To which ruling the defendant excepted. Exception noted."

As to the first question, "Did you come home in October?" there was no attempt to show the relevancy or materiality of the question. As to the second question, there was no proffer to show that the evidence sought to be elicited was in any way material or could have in any way affected the issue. There is nothing to show that the sustaining of the objections to the questions involved was at all injurious to the defendant, or that there was any connection between Jenkins and the misunderstanding or controversy between Matthews and his wife. Therefore, it has not been made to appear that from a consideration of the entire case the rejection of this testimony affected the substantial rights of the defendant. See Dixon v. State, 79 Fla. 586, 84 Sou. 541; Shuler v. State, 84 Fla. 414, 93 Sou. 672.

It also appears from the record that there was no proffer of proposed testimony and, therefore, no opportunity presented to the trial court to determine whether or not the testimony elicited could be of any benefit to the accused. Therefore, no error is shown. Davis v. State, 54 Fla. 34, 44 Sou. 757; Morasso v. State, 74 Fla. 269, 76 Sou. 777; Morey v. State, 72 Fla. 45, 72 Sou. 490; McCall v. State, 55 Fla. 108, 46 Sou. 321.

The third question simply challenges the sufficiency of the testimony to sustain the verdict and judgment. Our delineation of the salient fact proven by witnesses on behalf

of the State is sufficient to show that there was sufficient substantial testimony to sustain the verdict and judgment.

It is the contention of the plaintiff in error that premeditation was not proven. In Lowe v. State, 90 Fla. 255; 105 Sou. 829, this Court, speaking through Mr. Justice TERRELL, said:

"Premeditation involves a prior intention to do the act in question. It is not necessary, however, that this intention should have been conceived for any particular period of time. It is as much premeditation if it entered into the mind of the guilty agent a moment before the act as if it entered ten years before."

And in the same case it was said:

"Speaking on premeditation in the absence of motive in Adams v. State, 138 N. C. 697, 50 S. E. 768, the court said: 'Murder may be committed without any motive. It is the intention, deliberately, formed after premeditation, so that it becomes a definite purpose, to kill. And a consequent killing without legal provocation or excuse constitutes murder in the first degree. The existence of motive may be evidence to show the degree of the offense or to establish the identity of the defendant as the slayer, but motive is not an essential element of the crime, nor is it indispensable to a conviction of the person charged with its commission.' State v. Wilcox, 132 N. C. 1143 (44 S. E. 625); State v. Adams, 136 N. C. 620, 48 S. E. 589.

"So far as we have been able to find the courts generally hold that there must be some sort of premeditation, that the fatal blow must not be the incident of mania or a sudden paroxysm of heat of passion such as suspends the cool, normal state of the mind, but as to whether there has been such premeditation is a question for the jury to be deter-

mined by them from a consideration of all the facts under the instructions given them by the court."

We find no reversible error and, therefore, the judgment should be, and is, affirmed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., concurs in the opinion and judgment.

BROWN, J., dissents.

CHAPMAN, J., not participating.

BROWN, J. (dissenting).—It seems to me that the second "question involved" should have been answered in the affirmative. At least, the defendant should have been permitted to show that nothing that his wife had said to him in any way implicated the deceased with the trouble between the defendant and his wife, but concerned a different man entirely. The theory the defense was trying to establish was that he had not been looking for the deceased for the purpose of killing him or to have any altercation with him; that they had always been on very friendly terms; that he was merely trying to find where his wife was, and that the altercation he had just had with her that evening did not concern the deceased at all, and that he therefore had no motive for raising any trouble with the deceased, much less for killing him. This testimony would have tended to rebut the implication of the State's evidence that he, the defendant, was jealous of the deceased and was looking for him with the intent to kill him, and would have tended to support the defendant's contention that he shot in self-defense.