50 So.2d 529 (1951)
LEIBY
v.
STATE.
Supreme Court of Florida, en Banc.
February 13, 1951.
Richard M. Smith, Bronson, for appellant.
Richard W. Ervin, Atty. Gen., and Phillip Goldman, Asst. Atty. Gen., for appellee.
CHAPMAN, Justice.
The record in this case discloses that the body of Leonard Applebaum was by a bridge inspector of the State Road Department found under Bridge #98 of the Tamiami Trail in Collier County, Florida, shortly after the noon hour on March 15, 1949. It was in a state of decomposition and the odor therefrom attracted the attention of the inspector. The body was removed and examined, when several .22 caliber pistol ball wounds were found in the body and one pistol ball penetrated the skull and brain and lodged in the opposite *530 inside wall of the skull of Applebaum. About the bridge spots of blood were found and a newspaper under the head of the deceased was saturated with blood and bore the date of March 8, 1949.
Applebaum, at the time of his death, was about 26 years of age, weighed around 160 pounds and was by profession a pharmacist and a resident of the State of Maryland. In early March of 1949 alone he drove his Mercury Coupe automobile for a short vacation from his home in Maryland to Miami, Florida, and registered at a hotel in that city. The wearing apparel needed for the trip was in a bag in his car; he obtained Travelers' Checks, and he wore some rings. The automobile had a Maryland license tag.
The appellant, Merlin James Leiby, alias Bill Jordan, alias Jimmie Scanlin, was arrested by the police of Jacksonville in the City of Jacksonville, Florida, on suspicion around the 20th or 21st of March, 1949, and carried to the police station. The automobile driven by him at the time was seized by the Jacksonville police. He was closely interrogated at the police station, and the appellant admitted to the officers of the City of Jacksonville the killing of Applebaum and placing his body under Bridge #98 in Collier County, Florida.
The Jacksonville police communicated with the Sheriff of Collier County about the arrest and subsequent confession of the appellant, and, upon the Sheriff's arrival in Jacksonville, the appellant made a similar confession to the Collier County officer. The appellant was taken to Miami, Florida, where he was identified by several people. A dealer in second hand automobiles identified the appellant as the man from whom he purchased the Mercury Coupe bearing a Maryland license. The car had a bloody spot near the center of the car seat. The appellant sold the Mercury Coupe to the dealer under the name of Leonard Applebaum. He obtained cash on one of the Travelers' Checks under the name of Leonard Applebaum. He formed the acquaintance of some young people at a skating rink under the name of Jimmie Scanlin. He exhibited to them large sums of money. He had in his car a .22 caliber pistol. The appellant made contradictory statements about the "bloody spot" on the seat of the Mercury Coupe.
As a part of the appellant's confession, he stated to the officers that he made appellant's acquaintance at his hotel in Miami, Florida, and, after a visit to a bar for drinks, they shot crap in a hotel room, resulting (according to Leiby's story) in the appellant winning everything Applebaum had, inclusive of his Mercury Coupe, and a further indebtedness Applebaum was financially unable to pay but had friends in New Orleans from whom Applebaum, according to Leiby, could get the money necessary to pay Leiby the balance due on his (Applebaum's) dice game indebtedness. So the two left Miami on March 11, 1949, for New Orleans in the Mercury Coupe to get the money to pay Leiby. After traveling a considerable distance on the trip, Applebaum changed his mind, a dispute arose, and Applebaum attacked Leiby and he (Leiby) was forced to shoot Applebaum in self defense. After Leiby shot Applebaum six times with the .22 caliber pistol, he placed his body, late in the afternoon of March 11, 1949, under Bridge #98, where it was later found by the inspector.
The record further discloses that the appellant, after admitting killing Applebaum and placing his body under a bridge in Collier County, voluntarily drove with the Sheriff over the portions of the road alleged to have been traveled by the appellant and Applebaum and purported to point to important spots or incidents about their tour. One was a mail box at the bus station at Sarasota where cards written by Applebaum to his relatives in Maryland were posted. Another was near Lake Wales where the appellant drove the Mercury Coupe into another car then on the highway, and the traveling bag of the deceased was later found near the scene of the accident. This bag had in it shirts, underwear, socks, etc., of the deceased. On the occasion of the automobile collision, the appellant was heard to say he "was in a hurry to get back to Miami". The appellant failed to point out the exact spot en route where he shot Applebaum, *531 nor where he changed his bloody clothes after shooting him.
The appellant told the Sheriff that after shooting Applebaum on the afternoon of March 11, 1949, he kept the body in the back compartment of the Mercury Coupe until Sunday, when he placed the body under Bridge #98 in Collier County. Thereafter, he washed the blood off his hands; tried to wash the blood from his clothes but failed  then he threw the blood stained clothes into the bushes and put on some of Applebaum's clothes; took the deceased's signet ring and Travelers' Checks and drove away in the Mercury Coupe owned by the deceased. The appellant was not sworn as a witness, neither did he testify or offer any evidence whatsoever in his behalf during the course of the trial. Conflicting statements concerning this crime, as made by the appellant to the different officers, are irreconcilable.
On February 15, 1950, a grand jury of Collier County, Florida, returned a first degree indictment against Merlin James Leiby charging him with the murder of Leonard Applebaum in Collier County on March 11, 1949. He was placed upon trial and by a jury convicted of murder in the first degree, without recommendation to mercy. A motion for a new trial was made and denied, when the trial court entered a judgment imposing the death penalty. Leiby appealed.
It is contended that the trial court erred in overruling and denying appellant's motion to quash the indictment on the grounds, first, that the members of the grand jury presenting the indictment in this cause were disqualified to hear the facts and make a fair and impartial presentation because of a previous indictment (which appears to have been quashed) rendered against the appellant; second, the grand jurors had fixed opinions as to the appellant's guilt prior to presenting the indictment in the case at bar; third, a previous indictment by the same grand jury for the same crime was presented on July 20, 1949. The motion to quash was not sworn to and the transcript before us fails to include the indictment alleged to have been presented under date of July 20, 1949. Questions were propounded by counsel to a Mr. Ellis touching his qualifications as a grand juror. The proposed juror frankly stated that from what he had heard he believed the appellant was guilty of murder, but that his views, based on hearsay, would be disregarded and such conclusions as reached would yield to the sworn testimony and he would not be influenced by his previous opinion based on hearsay evidence. We fail to find merit in this contention. See Chapter 905, F.S.A.
It is next contended that the evidence adduced by the State of Florida during the progress of the trial failed to show that the alleged crime was committed in Collier County, Florida. The indictment clearly charges that the crime was committed in Collier County. If the admissions as made by the appellant to the different officers concerning this crime are controlling, our conclusion would be that the actual shooting of Applebaum did not occur in Collier County, but, as above pointed out, many contradictory statements concerning the crime were made by the appellant to different people. The medical testimony is to the effect that blood will not flow from wounds over five minutes after death. The drops of blood found about the bridge, on the seat of the Mercury Coupe, on the newspaper and on some rocks near the bridge are disputes and conflicts in the evidence for the jury, under our judicial system. We do not overlook the fact that the appellant told the officers that the killing did not occur in Collier County, or his statement to the effect that he placed the body under the bridge on Sunday morning, March 13, 1949, after transporting the same in the rear compartment of the Mercury Coupe from Friday until Sunday. This assignment is without merit.
Counsel for appellant contends that the evidence adduced by the State is legally insufficient to support a verdict and judgment of murder in the first degree because: (1) it fails to show premeditation; (2) or that the appellant shot Applebaum in the perpetration of the crime of robbery. The answer to the contention is that the motive of the crime was robbery and evidence *532 going to the point of premeditation is as a matter of law presumed. It is further argued that since the robbery occurred after the death of Applebaum it is not unlawful to rob a dead person. This contention is not only unsound but is not supported by the record.
It is next contended that the trial court erred in refusing or declining to give, at the request of appellant's counsel, the following instruction to the jury:
"Gentlemen of the Jury, if you are convinced that Defendant did the killing but without premeditated design to effect the death of the deceased, the fact that a robbery took place after the killing will not act to supply this premeditated design. The crime of homicide ceases at the moment of death and cannot go beyond that moment. The State must prove beyond and to the exclusion of every and all reasonable doubt that either premeditated design was present or that the killing occurred while in the process of committing robbery or both. If it fails in the proof of either of these it has failed to prove first degree murder."
Under our adjudications the requested charge must be considered in light of all other charges given on the point at issue. It cannot be said that error was committed by a refusal to give the requested instruction when all the instructions as given are reviewed in their entirety.
In a motion for a directed verdict at the conclusion of the State's case and in a motion for a new trial counsel for appellant contended that the evidence was insufficient to support the verdict and judgment entered below. We have reviewed all the evidence, considered its weight and sufficiency and it is our conclusion that ample testimony appears in the record to support the verdict of the jury. Other assignments have been carefully reviewed and reversible error has not been made to appear.
Affirmed.
SEBRING, C.J., and TERRELL, THOMAS, ADAMS, HOBSON and ROBERTS, JJ., concur.