104 So.2d 352 (1958)
James H. LARRY, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
July 11, 1958.
Tracy L. Riddle, Quincy, for appellant.
*353 Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
TERRELL, Chief Justice.
Appellant, James H. Larry, was indicted, tried and convicted of murder in the first degree without recommendation to mercy. The indictment charged that appellant "unlawfully and from a premeditated design to effect the death of one Alex Salters, did kill and murder the said Alex Salters by chopping and cutting him with a hatchet or other blunt instrument." The death penalty was imposed and this appeal was prosecuted.
Appellant offers three questions as basis for reversal and treats them together but we think they may be comprehended in the single question of whether or not the evidence is sufficient to show a premeditated design on the part of appellant to murder Alex Salters.
Appellant was the only witness to the tragedy which is shown to have been committed in the early afternoon of October 12, 1956. It occurred at the home of the deceased, his wife being away at work and his only child was at school. It is not disputed that appellant went to Alex Salters' home and engaged him in combat but he says that Salters precipitated the controversy by accusing him of "pimping" on Salters concerning the "moonshine business" and that he struck the first blow with the hatchet when Salters pulled a gun on him and threatened to kill him. The physical facts revealed by police officers and the examining physician show that Salters' body was found on the floor of his living room between 4:30 and 5:00 P.M., on the day of the murder. He was lying on his back with his neck about half severed and cuts on both sides of his head. The doctor testified that the head was "beat to a pulp like crushed ice," which would require at least six blows with a weapon like the hatchet introduced in evidence. There was blood on the front porch and inside the living room; there was blood spattered on the walls, curtains and window shades. There was a bucket of bloody water on the kitchen table and blood was smeared on the back door leading from the kitchen to the yard.
Appellant was arrested the night following the homicide [Friday]. By Monday following, he made statements about the crime to the sheriff, the deputy sheriff, the state attorney and the police officers. Testimony as to what he said on those occasions was given without objection. On Sunday night the appellant charged two others with killing Salters and they were taken in custody. Appellant then proffered to show the sheriff where one of the two had concealed the hatchet. He led the sheriff to the place in the woods where the hatchet was hidden, but on return to the jail in Quincy, appellant apologized to the two men whom he had falsely accused of the homicide, admitted that he killed Salters with the hatchet, washed the blood from it in the bucket of water on the table in the kitchen and left the premises. On Monday morning he led the state attorney and the sheriff to a place in the woods where he had hidden the pistol and the $245 which he said Salters gave him after the assault and admonished him that "they are going to catch you" and you will need it but that he would not need it.
In a statement to the chief of police appellant admitted that he knocked Salters in the head with the hatchet when Salters struck him in the stomach during the argument near the front porch, that he dragged Salters into the living room and from thence he knew nothing of what happened. The chief of police asked him why he did not shoot Salters with the pistol instead of "butchering him up" and his response was that people living close by would hear the shooting and would know who did it. As to questions about the money, he told the chief of police that Salters gave it to him saying "I'm going to die, you'll need the money and I won't need it any more."
*354 Appellant's version of the combat was about as follows: after accusing him of "pimping" on the colored people for selling whiskey, Salters said he was going to kill appellant; he pulled a gun from his pocket and appellant picked up the hatchet on the porch floor and hit Salters on the side of the head and knocked him to his knees. Salters arose, seized appellant by the collar when appellant snatched the gun from Salters' hand and put it in his pocket. During this struggle they went from the porch into the house; Salters struck appellant on the nose, he tried to run but Salters grabbed him and the fight continued. He admitted hitting Salters twice with the hatchet after they entered the house. He denied hitting him on top of the head or on the throat. He further testified that during the struggle deceased held appellant with one hand, put his free hand in his back pocket, pulled out his wallet, put it between his knees, took the money from it, put it in appellant's pocket and said that appellant would need it and should "run leave town." After this gift to the man who had beaten him with the hatchet, the deceased again snatched the gun from appellant's front pocket, but appellant again wrung it from his benefactor's hand and placed it in his back pocket.
This is a brief summary of the material evidence in the case. Whether or not it shows a premeditated design to commit the homicide was a question of fact for the jury. Savage v. State, 18 Fla. 909; Ernest v. State, 20 Fla. 383; Matthews v. State, 130 Fla. 53, 177 So. 321; Thomas v. State, 152 Fla. 756, 13 So.2d 148; Snipes v. State, 154 Fla. 262, 17 So.2d 93; Smith v. State, Fla., 90 So.2d 304.
Premeditation, like other factual circumstances, may be established by circumstantial evidence. Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned. No definite length of time for it to exist has been set and indeed could not be. Forehand v. State, 126 Fla. 464, 171 So. 241; Lowe v. State, 90 Fla. 255, 105 So. 829; Robinson v. State, 148 Fla. 153, 3 So.2d 804.
Examined as a whole, some aspects of the evidence are as fantastic and other aspects are as contradictory as are ever found. It is clear that there was bad blood between Salters and appellant; it is also shown that Salters had the reputation of carrying considerable sums of money on his person and that appellant had $245 of Salters' money cached in the woods when he was arrested. Much of appellant's testimony about the transaction is incredible and unreasonable. The brutality of the homicide and other factors warrant an inference of premeditation. Appellant's own testimony is such that it refutes his claim of self-defense.
Furthermore, we think there was ample evidence to sustain a verdict for murder in the first degree committed in the perpetration of a robbery. The trial judge instructed the jury on this phase of the law. His instruction was warranted by the evidence and in such a case premeditation is presumed as a matter of law. Leiby v. State, Fla., 50 So.2d 529. Proof of a homicide committed in the perpetration of the felonies set forth in § 782.04, Florida Statutes, F.S.A., may be shown under an indictment charging the unlawful killing of a human being from a premeditated design. Killen v. State, Fla., 92 So.2d 825; Everett v. State, Fla., 97 So.2d 241.
There is no merit to the contention that the state failed to prove that appellant went to Salters' home with a conscious intent to commit robbery. There is ample *355 evidence to show that appellant sought his victim for the purpose of taking by force, if necessary, any money which Salters had on his person or place. Appellant's explanation for his possession of Salters' money was so incredible that a jury of reasonable men were warranted in refusing to accept it. Robbery was certainly a reasonable deduction to be drawn from the evidence. It has been called the legal equivalent of premeditation, one of the essential attributes of first degree murder. Sloan v. State, 70 Fla. 163, 69 So. 871; Pope v. State, 84 Fla. 428, 94 So. 865; Killen v. State, supra.
This being a capital case, the validity of the conviction depending on the interpretation of the testimony, we have detailed much of it and reviewed it all as required by § 924.32(2), Florida Statutes, F.S.A. We think it justifies the verdict of the jury and the judgment of the trial court which we find to be free from error and are hereby affirmed.
Affirmed.
THOMAS, HOBSON, ROBERTS and DREW, JJ., concur.