Calvin B. JOHNSON, Petitioner,

v.

Harry K. SINGLETARY, Respondent.

No. 93–312–Civ–FTM–17D.

United States District Court,
M.D. Florida,
Fort Myers Division.

April 26, 1995.

Calvin B. Johnson, Bowling Green, FL, pro se.

Stephen Allan Baker, Atty. Gens. Office, Dept. of Legal Affairs, Tampa, FL, for respondents Harry K. Singletary, Jr., Robert A. Butterworth.

## ORDER

KOVACHEVICH, District Judge.

Petitioner initiated this action on November 5, 1993, by filing a Petition for Writ of Habeas Corpus (hereinafter Petition) pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction, following a jury trial, for six counts of attempted murder of a law enforcement officer and one count of firing at, within, or into an occupied vehicle.[1] (R. 266) Petitioner was sentenced to fifteen (15) years imprisonment as an habitual felony offender, pursuant to Fla.Stat. § 775.084, for the charge of firing at, or within, or into an occupied vehicle, to run concurrent with six consecutive terms of life imprisonment imposed for the attempted murder convictions, each with a minimum mandatory of twenty-five (25) years. (R. 256–57)

### SUMMARY OF THE FACTS

On January 2, 1990, several officers from the Lee County Sheriff's Department Narcotics Unit entered an area of Lee County known as Charleston Park to conduct an undercover "buy bust." (R. 69–72) According to testimony at Petitioner's trial, the Charleston Park area is a neighborhood known for drug activity and acts of violence against law enforcement officers. (R. 129) The narcotics officers entered Charleston Park at approximately 10:00 p.m. in a white van with green trim. (R. 129, 156) The van was not outfitted with videotape equipment. (R. 75) The officers planned to make an undercover purchase of cocaine from any dealers found in the neighborhood and, immediately after completing the purchase, to arrest the dealers. (R. 72, 100, 130, 148)

Deputy Busbee, in plain clothes and without a bullet-proof vest, was driving the van. (R. 72, 80) Five uniformed officers, and one officer not in uniform, were in the rear of the van, hidden from view by a fabric partition behind the driver. (R. 101, 114, 134) Most of the officers were equipped with a 9 millimeter department-issued firearm, although at least one other officer had both a .357 and a .38 caliber firearm. (R. 194) The uniformed officers intended to arrest the drug dealer as soon as the plain-clothes officer completed the purchase. (R. 72, 100, 130, 148)

Charleston Park has only one road that serves as both the entrance and the exit to the neighborhood. (R. 76) Upon entering the neighborhood, the officers found no dealers on the street corners, which they considered unusual. (R. 120) Busbee turned the van around to make another pass through the neighborhood. As Deputy Busbee drove the van into the neighborhood again, he passed a trailer home rented by Petitioner. (R. 76, 120) Deputy Busbee honked the van's horn, whereupon Petitioner came out of the trailer, approached the van, and entered into a conversation with Deputy Busbee regarding the sale of a twenty-dollar rock of crack cocaine. (R. 76–77)

·Petitioner agreed to sell the crack cocaine to Busbee. (R. 77) Petitioner went back into the trailer and returned with a white vial and what appeared to be a .38 caliber revolver. (R. 77) Busbee asked Petitioner whether he had a gun and Petitioner responded that if Busbee were a police officer, Petitioner was going to shoot him. (R. 78) In order to convince Petitioner that he was not a police officer, Deputy Busbee offered to drive the van into Petitioner's driveway. (R. 78) Because the van was parked a little bit past the driveway, it was necessary to turn the van around to drive it into the driveway. (R. 78) While Deputy Busbee was turning the van around, the officers decided to abort the sale. (R. 117) However, to get out of the neighborhood, they had to drive back by Petitioner. (R. 117)

Deputy Busbee turned the van around. (R. 117) One of the officers peered through the partition to look down the street. (R. 117) As the vehicle approached Petitioner, Busbee slowed the van down and started to

---

1. The verdict form reveals one conviction for firing at, within, or into an occupied vehicle, not two as claimed in the Petition. *Petition* at p. 3.

pull into Petitioner's driveway. (R. 80, 103) Busbee testified that Petitioner then stated "If you're the police I'm going to kill you," and that Petitioner fired at him. (R. 80) At the same time, the uniformed officers exited the side and rear doors of the van to arrest Petitioner. (R. 137) During the ensuing gunfire, Deputy Powell was shot in the chest. (R. 151) The bullet pierced his bullet-proof vest and was caught in the mesh layer of the vest. (R. 151, 191) Petitioner escaped into the darkness, and was apprehended the next morning at his mother's house, which was also in the neighborhood. (R. 82–83)

At trial, the State called the officers involved in the shoot-out. Some could identify Petitioner; others could not. (R. 83, 108, 121, 136, 183, 193) The gun and white vial were never found. (R. 91) A crime scene technician testified that 30 casings were recovered from the scene, but there was no testimony specifying how many of the casings were 9 millimeter, .357 caliber, or .38 caliber. (R. 162) The technician recovered a bullet from a door of the van. (R. 156) A firearms expert analyzed that bullet and the bullet retrieved from Powell's vest. (R. 169) He testified that the two bullets could have come from either a .357 or a .38 caliber revolver. (R. 169–172) He testified that one of the bullets could have been fired by several types of revolvers, possibly a Smith & Wesson. (R. 172) Because the other bullet was damaged, he could not conclusively state that it was fired from the same weapon as the first bullet. (R. 172) Petitioner's hands were not tested for gunpowder residue. (R. 175) The officers' .357 and .38 caliber firearms were not tested to see if they had been fired. (R. 174)

After the State rested, the court denied the defense's motion for a judgment of acquittal, wherein the defense alleged that the State had failed to prove the element of premeditation. (R. 200) Petitioner, represented by a public defender, then presented his case-in-chief. (R. 205–240) The defense called two witnesses to testify to prior incidents where officers harassed Petitioner, resulting in arrest, detention, or investigatory stops. (R. 205–217) This testimony was consistent with defense counsel's cross-examination of State witnesses regarding their prior contacts with Petitioner. (R. 87, 90, 122, 154) Petitioner also took the stand in his own defense and testified that he did talk to Deputy Busbee in the van. (R. 222) However, he claimed that he refused to sell cocaine. (R. 222) He claimed that he was carrying a can opener, not a .38 caliber revolver, because he had just opened a can of food for dinner. (R. 222) Petitioner also claimed that there were two armed drug dealers hiding behind a tree near his trailer. Petitioner claimed that he told Deputy Busbee to leave the neighborhood. (R. 223) He denied threatening or shooting Busbee and claimed that as the van turned around, he was attempting to warn Busbee that the other drug dealers might shoot or rob him. (R. 220–235)

Petitioner's jury trial lasted two days. The jury rejected Petitioner's defense of police harassment and mistaken identity and found him guilty on all counts. (R. 263–266)

### PROCEDURAL HISTORY

Petitioner, again represented by a public defender, filed an unsuccessful direct appeal, arguing four issues:

1) The evidence did not support a conviction for attempted first degree murder on Counts II through VI, as there was no showing of premeditation.

2) Petitioner was wrongly convicted of six counts of first degree murder on a law enforcement officer where the evidence failed to establish that six deaths could have occurred.

3) The trial court erred in sentencing Petitioner as an habitual offender upon his conviction for life felonies.

4) The court erred in imposing consecutive minimum mandatory sentences.

The Second District Court of Appeal affirmed Petitioner's convictions and sentences without written opinion.

Petitioner then filed a Motion for Post Conviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850, alleging ineffective assistance of counsel based on trial counsel's failure to "fully" argue the motion for judgment of acquittal, and three claims of

ineffective assistance of counsel related to counsel's failure to object to, and admission of, testimony concerning Petitioner's prior criminal activity. The Circuit Court denied the motion, and Petitioner appealed to the Second District Court of Appeal. The District Court of Appeal found Petitioner's first claim meritless, but remanded for further proceedings on the remaining issues.

On remand, the Circuit Court, pursuant to the Second District Court of Appeal's instructions, reviewed the pleadings, the case file, and the trial transcripts, and once again denied Petitioner's motion. On September 15, 1993, the Second District Court of Appeal affirmed, per curiam.

### THE INSTANT PETITION

Petitioner filed the instant Petition for Writ of Habeas Corpus on November 3, 1993. He raises the following grounds for relief:

1) Violation of the Fifth and Fourteenth Amendments of the United States Constitution, based on the insufficiency of the evidence to prove premeditation.

2) Violation of equal protection and due process guaranteed by the Fourteenth Amendment to the United States Constitution, based on the insufficiency of the evidence to support Petitioner's conviction on all six counts of attempted murder where the State failed to prove that all six officers could have been injured.

3) Violation of equal protection and due process guaranteed by the Fourteenth Amendment to the United States Constitution, due to Petitioner being sentenced as a violent habitual offender, thereby enhancing the sentence of a life felony, contrary to Section 775.084(b)(1), Florida Statutes.

4) Violation of the Fifth and Fourteenth Amendments, based on the imposition of six consecutive, rather than concurrent, life terms for the counts of attempted murder.

5) Ineffective assistance of counsel for trial counsel's failure to fully argue the motion for judgment of acquittal.

6) Ineffective assistance of counsel for trial counsel's cross-examination of Deputy Busbee, which elicited testimony regarding Petitioner's arrest for armed robbery.

7) Ineffective assistance of counsel for trial counsel's failure to move for a mistrial or request a curative instruction after Deputy Busbee testified about Petitioner's previous arrest for sale of cocaine.

8) Ineffective assistance of counsel for trial counsel's failure to object to the State's direct examination of Officer Malagon, which elicited testimony regarding the officer's past contact with Petitioner.

On December 27, 1993, Respondent filed a response to the Petition, acknowledging that Petitioner has exhausted state court remedies as to his first four grounds for relief by raising those claims on direct appeal. (Docket No. 4) Respondent's response includes a motion for summary judgment based on Petitioner's failure to raise federal claims and based on the factual meritlessness of Petitioner's claims. Petitioner responded to Respondent's response on January 25, 1994, claiming that the sentencing issues raised in his petition are properly reviewable by this Court because they allege a federal double jeopardy violation, and that his remaining claims also are properly reviewable by this Court. (Docket No. 5) Respondent filed a supplemental response on August 25, 1994, acknowledging that the allegations of ineffective assistance of counsel in the instant case were raised by Petitioner in his Rule 3.850 motion. (Docket No. 6) Respondent also asserts in his supplemental response that Petitioner's trial counsel was not ineffective, but rather elicited, or did not object to, testimony regarding Petitioner's previous contacts with law enforcement as part of trial strategy.

### DISCUSSION

■ *Ground 1:* Petitioner's first claim challenges the sufficiency of the evidence to prove premeditation.

The standard for federal review of a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307,

319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The Florida Standard Jury Instruction on premeditation provides:

'Killing with premeditation' is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

Fla.Stat. § 782.04(1)(a) (Fla.Stand.Jury Inst.Murder—First Degree).

Because a defendant's premeditated intent is seldom subject to direct proof, and the state more often relies on circumstantial evidence, "a trial court should rarely, if ever, grant a motion for judgment of acquittal based on the state's failure to prove mental intent." *Hardwick v. State*, 630 So.2d 1212, 1214 (Fla. 5th DCA 1994). "Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Holton v. State*, 573 So.2d 284, 289 (Fla.1990), *cert. denied*, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991) (quoting *Larry v. State*, 104 So.2d 352, 354 (Fla.1958)).

Trial testimony revealed that although Petitioner was unarmed when he first exited his trailer, he subsequently returned to his trailer and emerged with a vial and a .38 caliber revolver. (R. 77, 86) The State also introduced evidence of Petitioner's stated intent to shoot Busbee if he were a police officer, which later escalated to a threat to kill him if he were a police officer. Deputy Busbee quoted Petitioner as saying "I think you are [the police]" and "If you're the police I'm going to kill you" just before Petitioner fired his gun. (R. 79–80) The State elicited additional testimony that after Petitioner fired at undercover officer Busbee, the uniformed officers exited the van and identified themselves as law enforcement officers. (R. 80, 114, 119, 148) Petitioner continued to fire at the uniformed officers, hitting one officer in the chest (R. 181–82) and striking the van in the area where another officer stood. (R. 107) Petitioner was ten to twelve feet away as he fired at the group of officers. (R. 138)

Whether this evidence showed premeditation was a question of fact for the jury. *Larry v. State*, 104 So.2d 352, 354 (Fla.1958). Therefore, the trial judge did not err in denying Petitioner's motion for judgment of acquittal for lack of evidence to prove premeditation. Viewed in the light most favorable to the State, a rational trier of fact could have found, as Petitioner's jury did, that the evidence was sufficient to prove premeditation beyond a reasonable doubt.

*Ground 2:* As ground two, Petitioner claims that the evidence was insufficient to support six convictions for attempted murder because the State did not prove that all six officers could have been injured.

Petitioner's claim fails under the *Jackson v. Virginia* standard of review which, as stated above, requires this Court to find that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In the instant case, a rational trier of fact could have found that the evidence was sufficient to convict Petitioner of six counts of attempted murder even though the evidence did not clearly show that Petitioner fired six shots toward the officers.

In *Ogletree v. State*, 525 So.2d 967 (Fla. 1st DCA 1988), the defendant fired a single shot into a room of nine people. The defendant was convicted of nine counts of attempted premeditated murder, under Florida Statutes § 782.04(1)(a), which requires a premeditated intent to kill or harm a particular individual. The court held that "the unit of prosecution on a charge of premeditated murder, depending on the intent charged, may focus on the victim who is the subject of the premeditated intent to kill rather than on the act of firing the shot." *Id.* at 969–70. Furthermore, the court held that:

[S]ince there was no challenge below to the sufficiency of the evidence to support these charges, either by a motion for directed verdict or new trial, we cannot review the sufficiency of the evidence to prove the attempted premeditated murder charges in this case. *State v. Barber,* 301 So.2d 7 (Fla.1974) (Where no appropriate motion was made in the trial court to test the sufficiency of the evidence, the issue of the sufficiency of the evidence was held not open to appellate review on direct appeal from an adverse judgment). See also *Wolkooski v. State,* 510 So.2d 1149 (Fla. 1st DCA 1987) (Challenge to sufficiency of evidence cannot be heard on appeal where issue not raised in trial court by filing of motion for judgment of acquittal at close of state's case or at close of all the evidence); *E.J.K. v. State,* 508 So.2d 422 (Fla. 2d DCA 1987) (Failure to move for judgment of acquittal or new trial to provide trial court with opportunity to test sufficiency of evidence precludes appellate review of the sufficiency claim).

*Id.* at 970.

Similarly, in *Blanco v. State,* 447 So.2d 939 (Fla. 3d DCA 1984), a conviction for two counts of attempted first degree murder under sections 782.04, 775.087, and 777.04, Florida Statutes (1981), was upheld where defendant fired his gun once at relatively close range at two police officers who were pursuing him, missing both officers. Subsequent to his arrest, the defendant told one of the officers that he would kill him next time. The court held that both elements of attempted first degree murder were present: (1) an intent to commit the underlying crime of murder and (2) an overt act designed to effectuate that intent, carried beyond mere preparation, but falling short of executing the ultimate design. The court stated that "the fact that one shot, rather than two, was fired at the two pursuing officers cannot by the weight of authority change this result." *Id.* at 940 (citations omitted); *see also Callaghan v. State,* 462 So.2d 832 (Fla. 4th DCA 1984).

In the present case, Petitioner was charged with attempted murder under section 782.04, Florida Statutes (1989) (murder), section 777.04, Florida Statutes (1989) (at-tempt), and section 784.07(3), Florida Statutes (1989) (assault or battery of law enforcement officers . . .; reclassification of offenses).

▮ At trial, counsel for Petitioner argued a motion for judgment of acquittal at the close of the State's case, asserting that the State failed to produce sufficient proof of premeditation. Counsel for Petitioner did not address the sufficiency of the evidence to prove the number of attempts in his motion for judgment of acquittal or at any other time during trial. Petitioner raised his claim of insufficiency of the evidence for the first time on direct appeal. In opposition to Petitioner's claim, the State argued that the issue was not properly preserved for appeal and, even if it had been properly preserved, it lacked merit under *Ogletree, Blanco,* and *Callaghan.* The Second District Court of Appeals affirmed Petitioner's conviction without written opinion. Pursuant to *Ogletree,* Petitioner failed to preserve the instant claim by failing to challenge at trial the sufficiency of the evidence to prove the number of attempts.

▮ Even if Petitioner's claim had been properly preserved, the claim is without merit. At trial, the officer's testimony included identification or description of Petitioner (R. 83, 108, 118, 121, 136, 183, 193); the number of muzzle flashes seen (R. 105, 119, 138); that several shots were fired by Petitioner (R. 81, 118–19, 137–39); and that the shots were fired in the direction of the officers, some of whom were very near each other (R. 107, 138). Testimony also was introduced that Petitioner had stated his intent to shoot and/or kill Deputy Busbee if he were a police officer (R. 78, 80).

A rational trier of fact could reasonably conclude that Petitioner intended to kill any police officers involved in the buy/bust and that the act of firing a deadly weapon several times toward the officers was an overt act, beyond mere preparation, to effectuate that intent. *Blanco v. State,* 447 So.2d at 940. Thus, a rational trier of fact could reasonably conclude, as Petitioner's jury did, that all six counts of attempted murder were proved beyond a reasonable doubt.

**Ground 3:** Petitioner claims that the State, in declaring Petitioner an habitual felony offender, enhanced the sentence of a life felony, contrary to Section 775.084(1)(b), Florida Statutes.

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a) [2]; *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Eagle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Errors which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.

■ The law has been settled for some time in both the Fifth and Eleventh Judicial Circuits that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. *Branan v. Booth,* 861 F.2d 1507 (11th Cir.1988); *Carrizales v. Wainwright,* 699 F.2d 1053 (11th Cir.1983); *Jones v. Estelle,* 622 F.2d 124 (5th Cir.), *cert. denied,* 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980); *Willeford v. Estelle,* 538 F.2d 1194 (5th Cir.1976). A state's error in applying its sentencing guidelines is not reviewable by a federal court, even when "couched in terms of equal protection and due process." *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988).

■ Furthermore, the record of the sentencing hearing reveals that Petitioner's sentences for the attempted murder convictions were not enhanced, as Petitioner argues. Petitioner was declared an habitual felony offender, and his sentence was enhanced only for Count VII, shooting at, within, or into an occupied vehicle. (R. 245–257) Therefore, Petitioner's claim lacks merit.

*Ground 4:* As ground four, Petitioner claims that the trial court should have imposed concurrent, rather than consecutive, life sentences for the attempted murder convictions. Additionally, in his reply to Respondent's response, Petitioner claims that the sentencing claims raised in the instant Petition allege double jeopardy violations.

Although Petitioner apparently is claiming that both ground three and ground four of the instant Petition allege a double jeopardy violation, his double jeopardy claim will be addressed only as a part of ground four because ground three does not, under any construction, allege a double jeopardy violation.

Petitioner's claim that the trial court should have imposed concurrent, rather than consecutive, life sentences for the attempted murder convictions is a sentencing issue that provides no basis for federal habeas corpus relief because it is solely an issue of state law unless the claim is construed to allege a double jeopardy violation. Therefore, ground four will not be addressed insofar as it alleges a state law sentencing issue.

■ Petitioner has not presented his double jeopardy claim to the state courts of Florida. A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380, *reh'g denied,* 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The courts of Florida must be given an opportunity to consider Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory. *Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). Moreover, Petitioner must fairly present his claim, *Castille v. Peoples,* 489 U.S. at 351, 109 S.Ct. at 1060, and the substance of the federal constitutional claim should be presented to the state court in order to exhaust the issue. *Watson v. Dugger,* 945 F.2d 367, 371–72 (11th Cir.1991).

■ Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 9, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992). The Eleventh Circuit recently discussed the *Tamayo–Reyes* decision:

**2.** 28 U.S.C. § 2254(a) provides:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

"Congress surely meant that exhaustion be serious and meaningful." *Tamayo–Reyes,* at 10, 112 S.Ct. at 1720. The Court went on to state that

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits.

*Id.*

*Footman v. Singletary,* 978 F.2d 1207, 1210–11 (11th Cir.1992).

■ Dismissal of the instant Petition for failure to exhaust state remedies is not appropriate, however, because Petitioner's failure to raise his double jeopardy claim on direct appeal renders this claim procedurally defaulted under state law.

A state court's rejection of a federal constitutional claim on procedural grounds will bar consideration of that claim by a federal habeas court if the state court's ruling rests on an independent and adequate state law ground (absent certain limited exceptions). *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Johnson v. Singletary,* 938 F.2d 1166, 1173 (11th Cir.1991) (en banc), *cert. denied,* — U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992).... [T]his court has specifically held that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law. *Whiddon v. Dugger,* 894 F.2d 1266 (11th Cir.), *cert. denied,* 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990).

*Bolender v. Singletary,* 16 F.3d 1547, 1556 n. 10 (11th Cir.1994).

When a petitioner has defaulted his claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice will result if the grounds are not addressed on their merits. Accordingly, Petitioner is not entitled to habeas relief on his double jeopardy claim.

■ Even if Petitioner's double jeopardy claim were not procedurally defaulted, it is without merit. The double jeopardy clause of the Fifth Amendment protects against three harms: a second prosecution for an offense after initial acquittal, a second prosecution for an offense after an initial conviction, and "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), overruled on other grounds, *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Petitioner seeks to invoke the third of these protections, that against multiple punishments for the same offense.

■ The test for compliance with the double jeopardy clause is "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Blockburger* test, however, is not applied where Congress has authorized punishments which would otherwise be inappropriately cumulative. *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). "[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Id.* "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

■ Petitioner's case is similar to the case of *Marshall v. Farley,* which involved an Indiana state prisoner seeking federal habeas

review of his multiple convictions and sentences for reckless homicide. 823 F.Supp. 615 (N.D.Ind.1993), *affirmed,* 42 F.3d 1391 (7th Cir.1994). In *Marshall,* the petitioner was involved in an alcohol-related accident in which six persons were killed. *Id.* In determining that the double jeopardy clause's prohibition against multiple punishments for the same offense was not violated, the district court looked to Indiana's statutes and decided that the Indiana legislature authorized multiple punishments. *Id.* The court stated:

> In crimes such as murder, manslaughter, battery, and reckless homicide, the gravamen of the offense is causing the death or injury of another person, i.e. the result is part of the definition of the crime. Thus, in these offenses where several deaths or injuries occur in the course of a single incident, the offense prohibited by statute has been violated several times over. The separate victims represent different offenses because conduct has been directed at each particular victim.

*Id.* at 617, quoting *Kelly v. State,* 527 N.E.2d 1148 (Ind.App.2d Dist.1988).[3]

In the instant case, this Court must also evaluate the state statutes. The applicable Florida statutes provide that "[A]ny person who is convicted of attempted murder of a law enforcement officer ... shall be guilty of a life felony," Fla.Stat. § 784.07(3), and "Any person convicted of attempted murder of a law enforcement officer ... shall be required to serve no less than 25 years before becoming eligible for parole." Fla.Stat. § 775.0825.

The gravamen of the offense here is the attempt to cause the death of a single officer. Thus, the legislature authorized multiple convictions where there were multiple intended victims. Petitioner clearly directed his conduct toward multiple victims when he moved the gun from Deputy Busbee to Powell to Vega, firing at each as well as the others in the group. In Florida, when a defendant is convicted of multiple offenses charged in the same charging document, the defendant "shall serve the sentences of imprisonment concurrently *unless the court directs that two or more of the sentences be served consecutively.*" Fla.Stat. § 921.16(1) (emphasis added). The Florida legislature clearly authorized the imposition of consecutive sentences and left the decision to the discretion of the sentencing judge. The trial judge in this case did not exceed the authority granted by the legislature. *See Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225. Therefore, the double jeopardy clause was not violated by the imposition of six consecutive life sentences.

*Ground 5:* Petitioner's first allegation of ineffective assistance of counsel focuses on the motion for judgment of acquittal that Petitioner's counsel argued at the close of the State's case. Petitioner claims counsel was ineffective in failing "to fully set fourth sufficient grounds to support the motion for judgment of acquittal." (Petition at p. 10A).

■ A person accused of a crime has the right to have "assistance of counsel" for his defense. U.S. Const. amend. VI. The assistance of counsel protects the right to a fair trial. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner's claim of ineffective assistance of counsel has two components: first, a showing that counsel's performance was deficient and, second, a showing that counsel's errors were so serious as to deprive the defendant of a reliable result at trial. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Respondent argues that Petitioner's counsel was not ineffective because any "bare bones" motion for judgment of acquittal is sufficient to preserve any and all issues related to the sufficiency of the evidence for appellate review. (Response at 3). Respondent's argument is contrary to the state's rules governing criminal proceedings. In

---

3. *Marshall* also supports this Court's determination that Petitioner is not entitled to relief on ground two because the evidence was sufficient to convict Petitioner of six counts of attempted murder.

Florida, a motion for judgment of acquittal "must fully set forth the grounds on which it is based." Fla.R.Crim.P. 3.380(b); *Hardwick v. State,* 630 So.2d 1212, (Fla. 5th DCA 1994). In this case, defense counsel made more than a bare bones argument; counsel alleged insufficient proof of premeditation as a basis for the motion.

 The issue then is whether Petitioner's counsel was required to set forth *all possible* grounds. This issue is most frequently discussed when the assistance of appellate counsel is challenged. Counsel is not required to raise every nonfrivolous argument that could be made. *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). The presumption of effective assistance of counsel is overcome only when a petitioner shows that his counsel ignored issues that were clearly stronger than the grounds which counsel raised. *Mayo* at 533; *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986).

 Petitioner asserts that his attorney should have challenged the sufficiency of the evidence to prove five of the six counts of attempted murder because only one of the bullets that he fired actually hit an officer. Petitioner's argument must fail, however, because a conviction for attempted murder does not require that the intended victim actually sustain an injury. Rather, it is sufficient that, as here, an is attempt made toward the commission of the offense. Fla.Stat. § 777.04(1).

Petitioner has not shown that his alternative ground for acquittal was clearly stronger than the ground of lack of proof of premeditation. Therefore, Petitioner has failed to establish that counsel's performance was deficient, as required by the first prong of the *Strickland v. Washington* test.

Petitioner's fifth claim also fails to meet the second prong of the *Strickland v. Washington* test. Petitioner has failed to show that the outcome of the case would have been different in the absence of counsel's alleged errors. Testimony at trial included identification or descriptions of Petitioner by eyewitnesses, (R. 83, 108, 121, 136, 183, 193); the number of muzzle flashes seen, (R. 105, 119, 138); the number of shots heard (R. 81, 118–19, 137–39); and that numerous shots were fired in the direction of the officers. (R. 107, 138) This evidence is sufficient to overcome a motion for judgment of acquittal based on Petitioner's asserted alternative ground. "[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance." *Bolender v. Singletary,* 16 F.3d 1547, 1573 (11th Cir.1994) (citing *King v. Dugger,* 555 So.2d 355, 359 (Fla. 1990)). Therefore, Petitioner has failed to overcome the strong presumption that his trial counsel provided reasonable and professional assistance.

*Grounds 6–8:* As grounds six, seven, and eight, Petitioner claims that his trial counsel was ineffective for introducing or failing to object to testimony regarding his prior crimes. Specifically, Petitioner claims that (1) his trial counsel was ineffective for eliciting testimony from Deputy Busbee on cross-examination regarding Petitioner's arrest for armed robbery; (2) trial counsel was ineffective for not moving for a mistrial or for not requesting a curative instruction after Deputy Busbee testified about Petitioner's previous arrest for sale of cocaine; and (3) trial counsel was ineffective for not objecting to the State's direct examination of Officer Malagon, which elicited testimony regarding Petitioner's prior arrests by the Lee County Sheriff's Department.

 To fulfill the Sixth Amendment right to counsel, counsel must advocate the defendant's cause, consult with the defendant on important decisions, and keep the defendant informed of important developments in his case. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel's challenged conduct might be considered sound trial strategy. *Id.*

 A review of the trial transcripts defeats Petitioner's claims. After consultation with Petitioner, two witnesses were added at the last minute to the defense's witness list. (R. 5–6) These two defense witnesses did

not see the shoot-out. The sole purpose for having them testify at trial was to advance Petitioner's claim of police harassment by testifying to incidents where Petitioner was questioned, detained, or arrested by the police. Counsel consulted with Petitioner several times before trial regarding the police harassment theory of the defense. (R. 5–6) Petitioner has no grounds to complain that much of the same evidence was introduced during the State's case, when it is clear that Petitioner and his attorney had planned for that evidence to be admitted during the defense case.

The testimony regarding Petitioner's prior crimes, especially those not resulting in conviction, would be inadmissible character evidence *if* offered to show Petitioner's propensity to commit crime. Fla.Stat. § 90.404(1). Here, however, the evidence was not introduced to establish Petitioner's propensity to commit crime, but to advance the defense theory of police harassment. Pursuant to Fla.Stat. § 90.404(2), evidence of other crimes, wrongs, or acts is admissible if offered for a purpose other than to show a propensity to commit crime.

Furthermore, since Petitioner took the stand in his own defense, the State could have brought out his felony convictions to impeach Petitioner even if he had not admitted his criminal history on direct examination. Fla.Stat. § 90.610(1) ("A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of [a felony]"). On direct examination, Petitioner admitted fifteen felony convictions. (R. 230–232) The State was entitled to rebut the theory of police harassment by showing that on fifteen prior occasions the officers' conduct was warranted. Based on the theory of the defense, the challenged evidence was properly admitted, regardless of whether the State or the defense prompted the testimony. Therefore, if trial counsel had moved for a mistrial based on the introduction of Petitioner's criminal history, that motion would have been properly denied.

Counsel's cross-examination and failure to object to the State's direct examination, combined with the testimony of the defense witnesses, including Petitioner, show the theory of police harassment was developed before trial and after consultation with Petitioner. Had counsel successfully objected to the admission of the now-challenged evidence, he would have failed to advocate Petitioner's theory of defense, which would also be grounds for a claim of ineffective assistance of counsel. *Strickland* at 688, 104 S.Ct. at 2064–65. Petitioner cannot have it both ways. He cannot now complain because the trial strategy failed.

Accordingly, it is

**ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **DENIED**. The Clerk shall close this case.